[No. 49310-3. En Banc. January 5, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. DOROTHY BERNICE JUDGE, *Appellant.*

---

*Thomas G. Burke, Douglas J. Hill,* and *Thomas Burke & Associates,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lee D. Yates, Senior Deputy,* for respondent.

DORE, J.—Defendant Dorothy Judge appeals her conviction in King County Superior Court for negligent homicide. This case was certified to us by the Court of Appeals for disposition.

On August 19, 1981, the 19–year–old defendant spent the afternoon drinking with three of her friends. The group included two young adult males, one of whom purchased the liquor they were consuming. Judge and her companions, in her parents' car with Judge driving, proceeded down 104th Avenue Southeast near Auburn toward 320th Avenue, where she lost control of the vehicle and struck four children. Three eventually died from injuries sustained in the accident.

Law enforcement officers and aid cars arrived several minutes after the accident at approximately 3:30 p.m. The children were attended by aid units. A Washington State Patrol Breathalyzer technician arrived at the scene with his van at approximately 3:34 p.m., and made contact with Judge a minute later. He told her she was under arrest for negligent homicide, advised her of her *Miranda* rights, told her he was going to be taking a blood sample from her and that she had the right to additional independent testing. The blood was later drawn by a paramedic at approximately 4:10 p.m. at the scene. Judge made no objection to the taking of the blood sample, which measured .17 grams percent alcohol. From the time of the accident until she was removed from the scene at approximately 7 p.m., Judge, in extreme emotional distress, displayed bizarre behavior.

Judge was charged in King County Superior Court with three counts of negligent homicide under RCW 46.61.520. The defense filed a motion to dismiss for loss or destruction of evidence and a motion to suppress the results of the blood test, including the issue of denial of counsel. A jury found Judge guilty on three counts of negligent homicide.

## ISSUES

The defendant raises the following assignments of error on appeal:

1. Whether RCW 46.20.308(1) allows a person arrested for negligent homicide a choice of taking a Breathalyzer test or a blood test.

2. Whether the taking of a blood sample in the subject case was unreasonable and violated U.S. Const. amend. 4, or Const. art. 1, § 7.

3. Whether the defendant was discriminately prosecuted in violation of the equal protection clause of U.S. Const. amend. 14, or Const. art. 1, § 12.

4. Whether defendant was denied effective assistance of counsel at a critical stage of the proceedings against her.

5. Whether the prosecution violated defendant's due process rights by failing to collect and preserve potentially exculpatory evidence.

## I

Defendant maintains she has a right under RCW 46.20-.308(1) to a Breathalyzer test instead of a blood test to determine alcohol consumption. RCW 46.20.308(1), as originally enacted, provided in pertinent part as follows:

(1) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of RCW 46.61-.506, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be

administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. Such officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506. The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to the test. *Unless the person to be tested is unconscious, the chemical test administered shall be of his breath only.*

(Italics ours.) Thus, the statute forced motorists suspected of drunken driving to choose between submitting to an intoxication test or having their license automatically revoked. *See generally* Comment, *Motor Vehicles— Drunken Driving: Implied Consent Comes to Washington*, 45 Wash. L. Rev. 656 (1970). The statute allowed for blood or Breathalyzer tests, but required that Breathalyzer tests be given instead of blood tests unless the defendant was unconscious. *See* Official Voters Pamphlet, at 7 (1968).

In 1975, the Legislature amended RCW 46.20.308(1) by adding the following proviso:

That if an individual is under arrest for the crime of negligent homicide . . . a breath or blood test may be administered without the consent of the individual so arrested.

Laws of 1975, 1st Ex. Sess., ch. 287, § 4, p. 1225. This amendment was added to the implied consent statute after the Washington courts ruled that the failure to inform the defendant of the right to revoke consent or the right to independent testing would result in exclusion of the blood alcohol test results. *State v. Turpin*, 94 Wn.2d 820, 824, 620 P.2d 990 (1980). *See State v. Wetherell*, 82 Wn.2d 865, 514 P.2d 1069 (1973); *State v. Krieg*, 7 Wn. App. 20, 497 P.2d 621 (1972). The 1975 amendment abrogated the right of negligent homicide defendants to refuse to submit to blood alcohol testing. *Turpin*, at 825.

As RCW 46.20.308(1) currently reads, negligent

homicide defendants have no right to refuse to submit to blood alcohol testing. The purpose of RCW 46.20.308(1) is

> to provide fair, efficient, scientific, objective, and reasonably reliable data relating to the sobriety of an arrested motorist believed, upon reasonable grounds, to have been driving while under the influence of intoxicants.

*Wetherell,* at 867. The 1975 proviso to RCW 46.20.308(1) uses the disjunctive "or" to declare that "a breath *or* blood test may be administered without the consent of the individual so arrested." (Italics ours.) Statutory interpretation is necessary only when the language of a statute is ambiguous. *Turpin,* at 824. The 1975 proviso's use of the word "or" implies the person to be tested has no right to refuse either a breath or a blood test. We adopt this interpretation of RCW 46.20.308(1).

## II

We next consider the question of whether the taking of a blood sample under the circumstances of the present case was so unreasonable as to violate U.S. Const. amend. 4 or Const. art. 1, § 7. We begin our analysis with the proposition that the taking of blood samples constitutes a "search and seizure" within the meaning of U.S. Const. amend. 4 and Const. art. 1, § 7. *State v. Meacham,* 93 Wn.2d 735, 738, 612 P.2d 795 (1980). *See Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966).

The seminal case regarding the constitutionality of taking of blood samples is *Schmerber v. California, supra.* In *Schmerber,* the defendant challenged his conviction for driving while intoxicated on the ground that the warrantless "seizure" of his blood over his objection violated his rights under the Fourth Amendment. The *Schmerber* Court rejected the defendant's claim that the seizure of blood was an unreasonable search and seizure. The Court identified three requirements deemed critical to the reasonableness of the intrusion in question. First, there must be a "clear indication" that in fact the desired evidence will be found.

Second, the test chosen to measure defendant's blood alcohol level must be a reasonable one. Third, the test must be performed in a reasonable manner. *Schmerber,* at 770–71.

Furthermore, the *Schmerber* Court rejected defendant's contention that a warrant must be obtained before blood samples may be taken. According to the Court:

> The officer in the present case . . . might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened "the destruction of evidence[.]" We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood–alcohol content in this case was an appropriate incident to petitioner's arrest.

(Citations omitted.) *Schmerber,* at 770–71.

In the present case, the taking of blood samples by the paramedic met the "reasonableness" requirements of *Schmerber.* As in *Schmerber,* the Washington State patrolman at the scene of the accident had probable cause to believe defendant Judge was intoxicated; therefore, there existed a clear indication a blood alcohol test would show she had consumed significant quantities of alcohol. Likewise, the method of blood alcohol testing employed was a reasonable one. As the *Schmerber* Court explained:

> Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. Such tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain.

(Footnote and citations omitted.) *Schmerber,* at 771.

## III

We next consider whether Judge was discriminator-

ily prosecuted in violation of the equal protection clause of the state or federal constitutions. Prosecutors are vested with wide discretion in determining whether to charge suspects with criminal offenses. *Bordenkircher v. Hayes,* 434 U.S. 357, 365, 54 L. Ed. 2d 604, 98 S. Ct. 663, *reh'g denied,* 435 U.S. 918, 55 L. Ed. 2d 511, 98 S. Ct. 1477 (1978); *State v. Pettitt,* 93 Wn.2d 288, 294, 609 P.2d 1364 (1980). Exercise of this discretion involves consideration of factors such as the public interest as well as the strength of the case which could be proven. *United States v. Lovasco,* 431 U.S. 783, 794, 52 L. Ed. 2d 752, 97 S. Ct. 2044 (1977); *Pettitt,* at 295. The exercise of a prosecutor's discretion by charging some but not others guilty of the same crime does not violate the equal protection clause of U.S. Const. amend. 14 or Const. art. 1, § 12 so long as the selection was not "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 368 U.S. 448, 456, 7 L. Ed. 2d 446, 82 S. Ct. 501 (1962), *quoted in Bordenkircher. Accord, State v. Jacobsen,* 78 Wn.2d 491, 498–99, 477 P.2d 1 (1970).

In the present case, defendant Judge maintains her equal protection rights were violated when the prosecutor chose to charge her but not her male companion who purchased the alcohol consumed by the group. The prosecutor, however, did not select defendant Judge on the basis of some unjustifiable standard such as race, religion, or other arbitrary classification. *See State v. Lee,* 87 Wn.2d 932, 936, 558 P.2d 236 (1976). Rather, defendant Judge was prosecuted because she was the driver of the automobile and the only occupant who violated RCW 46.61.520(1). The decision to prosecute Judge was rationally based on the prosecutor's ability to prove the charge. Therefore, the prosecutor's decision to charge her with negligent homicide but not the passengers in the car she was driving did not violate her equal protection rights under U.S. Const. amend. 14 or Const. art. 1, § 12.

## IV

We next must consider whether defendant was denied effective assistance of counsel at a critical stage in the proceedings against her in violation of the sixth amendment to the United States Constitution. A defendant's Sixth Amendment right to counsel arises at any critical stage in a criminal prosecution. *Coleman v. Alabama,* 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999 (1970); *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967); *Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966). However, no "critical stage" arises for Sixth Amendment purposes prior to the initiation of formal judicial proceedings by citation or indictment. *Kirby v. Illinois,* 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972); *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893, *vacated and remanded,* 449 U.S. 977, 66 L. Ed. 2d 240, 101 S. Ct. 390, *aff'd,* 94 Wn.2d 858, 620 P.2d 999 (1980).

In *Kirby,* the United States Supreme Court held that a showup after arrest, but before the initiation of any adversary criminal proceeding (whether by way of formal charge, preliminary hearing, indictment, information or arraignment), is not a criminal prosecution at which the accused, as a matter of absolute right, is entitled to counsel.

In *Kirby,* the Court stated at pages 688–89:

> In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in *Powell* v. *Alabama,* 287 U. S. 45, it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. See *Powell* v. *Alabama, supra; Johnson* v. *Zerbst,* 304 U. S. 458; *Hamilton* v. *Alabama,* 368 U. S. 52; *Gideon* v. *Wainwright,* 372 U. S. 335; *White* v. *Maryland,* 373 U. S. 59; *Massiah* v. *United States,* 377 U. S. 201; *United States* v. *Wade,* 388 U. S. 218; *Gilbert* v. *California,* 388 U. S. 263; *Coleman* v. *Alabama,* 399 U. S. 1.
>
> This is not to say that a defendant in a criminal case has a constitutional right to counsel only at the trial itself. The *Powell* case makes clear that the right attaches at the time of arraignment, and the Court has

recently held that it exists also at the time of a preliminary hearing. *Coleman* v. *Alabama, supra.* But the point is that, while members of the Court have differed as to existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

(Footnote omitted.)

 An earlier case, *Schmerber v. California, supra,* strengthens our holding that Judge had no Sixth Amendment rights to counsel at the time blood was removed from her. In *Schmerber,* the United States Supreme Court held that where submission to a blood test is made *mandatory* by statute, the presence or absence of counsel is irrelevant and no Sixth Amendment issue arises. In our state, RCW 46.20.308(1) also requires *mandatory* submission to blood alcohol testing in negligent homicide cases.

Defendant Judge was under arrest but had not been formally charged with negligent homicide when the blood sample was taken from her at the scene of the accident. Consequently, no constitutional Sixth Amendment right to counsel had attached when the blood sample was taken. *Kirby v. Illinois, supra.*

## V

Finally, we must determine whether the prosecution violated defendant's due process rights by failing to collect and preserve potentially exculpatory evidence. Defendant claims investigating officers failed to measure and record skid marks and dimensions of the road and shoulder. Furthermore, according to defendant, the State patrolmen also failed to examine and preserve the bicycles and clothing of the victims and failed to examine her vehicle for evidence supporting her theory of contributory negligence. According to Judge, at least one of the children was on his bicycle in the road when she came around the corner where the accident occurred. Judge claimed she steered onto the gravel

shoulder and applied her brakes in order to give the child clear berth. She maintained her attempt to avoid the child, rather than her intoxication, was the cause of the accident.

The duty of the State to preserve material evidence is derived from the duty to disclose exculpatory evidence. *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). The *Brady* Court adopted a materiality test holding that due process requires a state to disclose evidence when it is material to the issue of guilt or innocence. In *United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976), the Supreme Court applied the *Brady* rule to three distinct suppression situations. First, where prosecutorial misconduct is involved, a conviction must be set aside if there is any "reasonable likelihood" the undisclosed testimony could have affected the jury's decision. *Agurs,* at 103. Second, if the defense has made a pretrial request for specific evidence, the test focuses on whether the suppressed evidence "might have affected the outcome". *Agurs,* at 104. The last situation is where a general *Brady* request has been made or no request has been made at all. The duty to disclose evidence in such a situation arises only if the evidence "creates a reasonable doubt that did not otherwise exist". *Agurs,* at 112.

In *State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976), the court extended the application of the duty to preserve material evidence to governmental loss or destruction of such evidence.

> [If the constitutional duty to disclose applied] only when the exact content of the non–disclosed materials was known, the disclosure duty would be an empty promise, easily circumvented by suppression of evidence by means of destruction rather than mere failure to reveal.

*Wright,* at 788 (quoting *United States v. Bryant,* 439 F.2d 642, 648 (D.C. Cir. 1971)). Nevertheless, the *Wright* court acknowledged that cases involving the loss or destruction of material evidence pose a significantly different problem than the traditional nondisclosure cases in which the sup-

pressed evidence is still in existence. *See Wright,* at 787–89.

In *State v. Vaster,* 99 Wn.2d 44, 659 P.2d 528 (1983), the court considered the problem of inadvertent or good faith loss or destruction of evidence by police or the prosecution. We ruled that the defendant has the burden of showing there is a reasonable possibility the missing evidence would have affected his ability to present a defense. *Vaster,* at 52. If such a reasonable possibility is found, the court must balance it against the ability of the prosecution to have preserved the evidence (considering the procedures established for preserving evidence), the nature of the missing evidence, and the circumstances surrounding its loss. *State v. Vaster, supra.*

 Here the defendant failed to show that the State violated its duty to preserve potentially exculpatory evidence. Neither *Brady* nor *Wright,* or their progeny, imposes a duty on the State to expand the scope of a criminal investigation. As stated by the Court of Appeals:

> The State "is required to preserve all potentially material and favorable evidence." This rule, however, has not been interpreted to require police or other investigators to search for exculpatory evidence, conduct tests, or exhaustively pursue every angle on a case. The police are required only to preserve that which comes into their possession either as a tangible object or a sense impression, if it is reasonably apparent the object or sense impression potentially constitute material evidence.

(Citations omitted.) *State v. Jones,* 26 Wn. App. 551, 554, 614 P.2d 190 (1980) (quoting *State v. Hall,* 22 Wn. App. 862, 866–67, 593 P.2d 554 (1979)).

Defendant failed to argue that the accident scene couldn't have been investigated the following day by Judge, her family, friends, or her attorney. Presumably the skid marks on the road would still be present and could be measured the next day. Her parents' automobile, which she drove, undoubtedly was available to her. There is no showing that the car and bicycles were not available for her inspection. Investigating officers have no duty to investigate

potentially exculpatory evidence at a crime site. In any event, there is no showing by Judge that the claimed investigation by the police to secure evidence would have been helpful to the defendant, which is a requirement of *Wright.* It is well established that contributory negligence is not a defense to negligent homicide. *E.g., State v. McDaniels,* 30 Wn.2d 76, 89, 190 P.2d 705 (1948); *State v. Carlsten,* 17 Wn.2d 573, 576–77, 136 P.2d 183 (1943); *State v. Nerison,* 28 Wn. App. 659, 661 n.1, 625 P.2d 735 (1981). Evidence of contributory negligence may be material to whether the defendant's negligence was a proximate cause of the death. *State v. Nerison, supra. See State v. Ramser,* 17 Wn.2d 581, 590, 136 P.2d 1013 (1943). Nevertheless, to escape liability, defendant would have to show contributory negligence was a supervening cause without which her negligence would not have caused the accident. *Bonica v. Gracias,* 84 Wn.2d 99, 100–01, 524 P.2d 232 (1974); *Everest v. Riecken,* 26 Wn.2d 542, 546, 174 P.2d 762 (1946). Given the facts of the present case, her ability to make such a showing would be highly unlikely.

## Conclusion

Under RCW 46.20.308(1), a person arrested for the crime of negligent homicide must submit either to a blood test or to a Breathalyzer test at the arresting officer's discretion. The nonconsensual taking of a blood test at the scene of an automobile accident does not violate constitutional protections against unreasonable searches and seizures, so long as the test is performed in a reasonable manner. There was no violation of the equal protection clause in charging the driver of the car but not the passengers. Under *Kirby v. Illinois, supra,* and *Schmerber v. California, supra,* it was unnecessary to furnish Judge with access to an attorney under the Sixth Amendment, as no adversary proceeding had commenced; *i.e.,* citation, preliminary hearing, etc., at the time blood was taken from Judge. When Judge was taken into custody and before blood was removed, she was given her *Miranda* rights, including her right to call coun-

sel. However, she refused to ask for counsel at that time, and waived her right to counsel.

The investigating officers had no duty to investigate the accident scene from the defendant's viewpoint.

We affirm.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACH-TENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., concur.