THE STATE OF WASHINGTON, *Respondent,* v. MARIO
GUITTIEREZ ALONZO, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. JUAN
CORDERO–HERNANDEZ, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. ORESTO
RIVERO–BASTIDA, *Petitioner.*

---

THE STATE OF WASHINGTON, *Respondent,* v. BENITO
LOINAZ FLEITES, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. ANTONIO
TORRES, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. RAFAEL
CALDERO–MUNOZ, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. LMILO
ORTIZ–RAMOS, *Petitioner.*

*Neil Fox* and *Mark W. Muenster* of *Washington Appellate Defender Association,* for petitioners.

*Norm Maleng, Prosecuting Attorney,* and *Roland Nikles* and *T. Anthony Platter, Deputies,* for respondent.

WEBSTER, J.—The defendants, all Cubans, were arrested for selling marijuana near the Pike Place Market during a week–long "emphasis patrol" by Seattle Police. Alleging

they were the victims of impermissibly selective prosecution, the defendants moved to dismiss. Their cases were consolidated for hearing before a superior court judge.

At the hearing below, the parties stipulated that "[a]ll joint defendants are Cuban Nationals" accused of selling marijuana in the Pike Place Market area between September 3 and September 10, 1984. Seattle Police Officers A and B testified they set up a special emphasis patrol during that week at the 100 block of Pine Street and the 1500 block of First Avenue in response to complaints by area merchants and citizens about drug dealing. Some of the complaints mentioned Cubans in particular, but most simply referred to drug dealing. During the special emphasis program, Officers A and B watched the target area from an observation post. They would point out to undercover agents persons whom they recognized as having been arrested before for selling drugs; however, they did not specifically direct the agents to approach only those persons. After seeing the likely dealers pointed out, the undercover agents would walk onto Pine Street or First Avenue and make a "smoke sign" indicating that they wanted to buy marijuana. The agents would then wait to be approached by an interested seller.

Officer A testified that the only non–Cuban whom police observed selling marijuana, but did not arrest, was a juvenile. Officer B stated that he saw a few black juveniles buy marijuana, but that they were not arrested because the emphasis of the program was on adult offenders.

Citizens who worked in the Market area testified for the defendants. One citizen, R.V., testified that he had been approached on First Avenue by males who offered drugs, but not before October of 1984. D.L., who has worked in the Market area for 8 years, testified that at least twice a week he walked through the 2–block area where the defendants were arrested. He stated that he was often approached by drug sellers. On the 1500 block of First Avenue, D.L. observed mostly American Indians and no Asians selling drugs the week of the emphasis patrol. On

the 100 block of Pine Street he observed mostly American Indian and American black sellers. D.L. said he had seen some Cubans in the area but had never been accosted by them.

L.H., who had worked in the Market area for years as well, stated that she also walks through the 2–block area of First and Pine about twice a week. She stated she had observed many whites, Asians, American blacks, and Cubans selling drugs in the area, but never any American Indians.

After considering the evidence in the light most favorable to the defendants, the trial court concluded that the defendants had not made a prima facie case of selective prosecution and denied their motion to dismiss. Whether the trial court erred in its ruling is the issue on appeal.

■ "[A]lthough prosecutorial discretion is broad, it is not '"unfettered."'" *Wayte v. United States,* 470 U.S. 598, 608, 84 L. Ed. 2d 547, 556, 105 S. Ct. 1524 (1985). The decision to prosecute may not be based upon race, religion, or other arbitrary classification. 470 U.S. at 608; *United States v. Steele,* 461 F.2d 1148, 1151 (9th Cir. 1972). In order to make a prima facie case of selective prosecution, however, the plaintiff must show that the particular enforcement had a discriminatory effect upon the plaintiff's class and that it was motivated by discriminatory purpose. 470 U.S. at 608.

The defendants here attempt to show the first element, discriminatory effect, in two somewhat contradictory ways: first, by demonstrating that non–Cubans were selling drugs in the 2–block area in question during the enforcement period but were not prosecuted; and second, by showing that the particular 2–block area was "Cuban turf", but non–Cubans were dealing nearby. The evidence the defendants presented in support of the first theory was contradictory and inconclusive. The civilian witnesses made conflicting observations of the nationalities and races of drug sellers in the Market area. D.L. stated that he had seen mostly American Indians and American blacks selling

drugs on First Avenue and Pine while L.H. said she had never seen American Indians but had seen many whites, Asians, and some Cubans. Officers A and B both testified that although they had seen non–Cubans selling drugs in the enforcement area during the past, during the particular week of September 3–9, 1984, they saw no non–Cuban drug sellers, with the exception of one juvenile. The fact that police did not arrest a juvenile dealer does not show discriminatory effect against Cubans, but against adults—not an arbitrary classification. The police stated that they did not arrest the one juvenile they observed selling because they had had "no luck" prosecuting juveniles. The juvenile justice system is distinct from the adult justice system, and prosecutorial discretion may properly be based on factors such as the strength of the case which may be proven. *State v. Judge*, 100 Wn.2d 706, 713, 675 P.2d 219 (1984).

As to the defendants' second theory of discriminatory intent, there was no evidence presented of nearby areas of heavy drug dealing by non–Cubans. Police and both L.H. and D.L. testified that the 1500 block of First Avenue and the 100 block of Pine were two of the most notorious areas for drug dealing in the Market area.

Even if the defendants had shown discriminatory effect on Cubans, they would still need to show discriminatory intent. To meet this burden, the defendants must show more than "intent as awareness of consequences." *Wayte v. United States*, 470 U.S. at 610. They must show that the defendants' selection was "'. . . at least in part "because of," not merely "in spite of," its adverse effects" upon Cubans. 470 U.S. at 610 (quoting *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279, 60 L. Ed. 2d 870, 99 S. Ct. 2282 (1979)). Even if the police knew the enforcement program was likely to affect mostly Cubans, there has been no showing that police selected the particular 2–block area in order to arrest Cubans, and not because it was an area of heavy drug dealing. The fact that the officers directed their agents to known dealers, who happened to be Cuban, and the fact that some of the complaints to police mentioned

Cubans in particular, are not enough to show that police deliberately set out to prosecute only Cuban drug dealers.

The decision of the trial court is affirmed.

SWANSON and COLEMAN, JJ., concur.