# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Matter of the Personal Restraint of: | No. 41505-4-II |
| DANIEL L. LONGAN, | |
| Petitioner. | UNPUBLISHED OPINION |

LEE, J. – Daniel Longan seeks relief from restraint imposed following his 2008 convictions

on three counts of first degree assault with firearm sentencing enhancements. He claims that his

restraint is unlawful because of a public trial violation, ineffective assistance of defense counsel,

prosecutorial misconduct, an improper special verdict form, and cumulative error. We hold that

none of these claims has merit. Accordingly, we deny his petition.

FACTS

Facts about the Offense

The following facts are from this court's unpublished opinion in *State v. Longan*, noted at

151 Wn. App. 1061 (2009):

> At about 3:30 a.m. on March 20, 2007, in a high crime area of Longview, Officer Michael Berndt saw a green Honda turn quickly into an alley without signaling. Berndt followed the vehicle into the alley. The vehicle accelerated to 50 mph and turned onto 32nd Avenue without signaling. Berndt activated his overhead lights and pursued the vehicle. Continuing to speed, the vehicle made a turn onto Washington Way without signaling. As the vehicle reached 60 mph, Berndt activated his siren. As the vehicle turned onto Nichols Boulevard, Brandt saw the passenger's arm out the window. After the vehicle turned onto 21st Avenue, Brandt saw three muzzle flashes in his direction from the passenger window and heard three loud bangs. He notified dispatch that shots were fired at

him and continued his pursuit. After the vehicle turned onto Cypress Street and back onto 20th Avenue, Brandt saw two more muzzle flashes at him from the passenger window and heard two more loud bangs.

Officer Kevin Sawyer joined in the pursuit. The vehicle crossed the Lewis and Clark Bridge into Oregon. After the vehicle turned onto Highway 30, Brandt and Sawyer saw another muzzle flash and heard another loud bang come from the passenger window of the Honda. The vehicle continued to speed between 70 and 90 mph on Highway 30 until it hit spike strips and crashed. The officers arrested the vehicle's driver, Longan, and passenger, Heather Van Hooser, after they attempted to flee.

The State charged Longan with three counts of first degree assault, all with firearm enhancements. A jury found Longan guilty on all three counts.

*Longan*, noted at 151 Wn. App. 1061, 2009 WL 2602063, at *1.

Facts Relevant to Public Trial Issue

Once the jury venire was assembled and before any voir dire questioning, the court asked the following general question:

THE COURT: Is there anybody here who knows of any reason whatsoever why you might not be able to sit on this case? We usually get one or two hands.

Okay, yes, ma'am?

JUROR: I do have a health problem that could cause me to be late, or not very efficient.

THE COURT: Okay.

If—if you know what our schedule is, can you make that work?

JUROR: I—there's—it's doubtful—I mean, there's a doubt that I can.

THE COURT: Okay.

JUROR: If you'd like, I could talk to you privately, if you'd like to know more about that.

THE COURT: All right, we'll come back to it.

2

What is your name?

JUROR: [J.W.].[1]

THE COURT: Okay, we will come back to it, if need be.

Excerpt Verbatim Report of Proceedings (EVRP) (cause no. 37942-2-II) (June 23, 2008) at 12-13.

Before the trial court excused any jurors based on peremptory challenges, it had the following discussion in the hallway outside of the courtroom:

THE COURT: Ladies and gentlemen, if you'd give us just a moment.

[J.W.], if you would step out here with us.

THE COURT: I was looking at that again, and I—I don't think this is a problem; all right?

Hang on just a moment, until [defense counsel] comes out.

Okay, I just wanted to ask you about the medical situation, preferably without a whole lot of people hearing.

JUROR: Yes, I appreciate that.

It's kind of complicated. First, I have [inaudible] and I just—and that's a blood disease, by the way, okay? So—which causes me to have—to need phlebotomies, that type of things [sic].

But now I have a secondary condition, and for some reason, I'm having to go to the bathroom. Like this morning, I thought I would be late because I was in the bathroom a lot. And, so, that's—that was my concern, that I wouldn't even be here on times [sic].

So, that—if I were on the [inaudible] the jury—

_____

[1] We use the juror's initials to maintain the juror's privacy.

3

THE COURT: We take a break about every hour and a half, or so, and if—I always tell the jury if anybody wants a break raise your hand and we'll take one, I'm not gonna ask you why.

JUROR: Oh.

THE COURT: Would that be sufficient for you, do you think?

JUROR: If I could do that—I can—that ad they have on tv for a while, that's kind of me, you know, right now.

THE COURT: Yeah, so, you think that'll be sufficient for you?

JUROR: Yes, but then like—what happens if I'm late, like this morning? See, I just—I could've been late.

THE COURT: Yeah, okay.

JUROR: Now, I'm fine now, it just seems like I just have that—that one time in the morning, and, so that was—but I'm just fine to be [inaudible] here if you don't want me having to do that.

THE COURT: Okay.

All right. Thank you, ma'am.

JUROR: Sure. Thank you.

[STATE]: I think we're going to need [inaudible] the record.

THE COURT: [Defense counsel], for the record, at this point, your client was comfortable with not coming out here to participate in this?

[DEFENSE COUNSEL]: I specifically advised him of his right to do so, and he indicated that he had no problem with my advice; that he would decline the invitation; and would be happy to put that on the record—

THE COURT: Okay, yeah, we'll do that outside the presence of the jury.

EVRP at 107-09.

ANALYSIS

A.    PUBLIC TRIAL

Longan asserts that he was denied his right to a public trial when the trial court conferenced in the hallway outside the courtroom without conducting a *Bone-Club*[2] analysis when the subject of that conference was whether the juror's medical condition would prevent her from serving as a juror.[3] We disagree.

1.  Standard of Review

The United States and Washington Constitutions guarantee a defendant the right to a public trial. U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, § 22. Whether this right was violated is a question of law that we review de novo. *State v. Paumier*, 176 Wn.2d 29, 34, 288 P.3d 1126 (2012). The trial court may, under limited circumstances, close the courtroom after applying the *Bone-Club* factors and making specific findings on the record justifying closure. "[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). Our Supreme Court has already established that certain proceedings implicate the public trial right; for those proceedings that it has not, we apply the "experience and logic" test announced

---

[2] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995).

[3] We stayed resolution of this petition until our Supreme Court decided *State v. Njonge*, 181 Wn.2d 546, 334 P.3d 1068 (2014), *cert. denied*, 135 S. Ct. 880 (2015); *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 340 P.3d 810 (2014); *In re Pers. Restraint of Speight*, 182 Wn.2d 103, 340 P.3d 207 (2014). We do not discuss *Njonge*, however, because it did not address whether excusing a juror, privately questioned during voir dire regarding the juror's medical condition, violates the public trial right. Rather, it held that the record was insufficient to show that a closure occurred.

in *Sublett* to determine whether a courtroom closure implicating the public trial right has occurred. 176 Wn.2d at 75-78.[4]

In order to prevail on collateral review of an alleged public trial violation, a petitioner must show actual and substantial prejudice. *In re Pers. Restraint of Coggin*, 182 Wn.2d 115, 340 P.3d 810 (2014); *In re Pers. Restraint of Speight*, 182 Wn.2d 103, 340 P.3d 207 (2014).[5] Thus, Longan has the burden of showing both a closure and actual and substantial prejudice.[6]

2. Actual and Substantial Prejudice

Longan argues that the trial court closed the courtroom because the area in which the trial court held its conference was in a hallway closed to the public. Relying on *State v. Leyerle*, 158 Wn. App. 474, 242 P.3d 921 (2010), where this court held that conducting individual voir dire in the hallway violated the defendant's public trial right, Longan asserts a public trial violation. But

---

[4] Under this test, "the experience prong . . . asks 'whether the place and process have historically been open to the press and general public,'" and "[t]he logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). If the answer to both prongs is yes, the public trial right attaches, and the trial court must conduct an on-the-record *Bone-Club* analysis before closing the proceedings. *Sublett*, 176 Wn.2d at 73.

[5] Longan argues that these cases have no precedential value because they are plurality opinions. We disagree. "When there is no majority opinion, the holding is the narrowest ground upon which a majority agreed." *In re Pers. Restraint of Francis*, 170 Wn.2d 517, 532 n.7, 242 P.3d 866 (2010). Chief Justice Madsen, in her concurrence, explicitly stated that she agreed with the majority that a petitioner must show actual and substantial prejudice. *Coggin*, 182 Wn.2d at 123. Thus, five justices agreed on this point.

[6] In *Paumier*, the court considered the public trial violation on direct appeal, and therefore, Paumier needed only to show a closure and not prejudice because prejudiced is presumed. 176 Wn.2d at 36. In our case *Coggin* and *Speight* apply, not *Paumier*.

we need not address whether this was a closure because Longan cannot show actual and substantial prejudice resulting from the trial procedure.

The *Coggin* court noted: "'The public trial right serves to ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward, and to discourage perjury.'" *Coggin*, 182 Wn.2d at 121 (quoting *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005)). What occurred here did not undermine or implicate any of these goals. Juror J.W. was concerned that her medical condition might make it impossible for her to get to court on time or require her to interrupt the trial in order to attend to her needs. The trial judge afforded her some privacy in explaining her medical condition, which allowed the judge to make his decision on a more informed basis. None of these concerns threatened the fairness of the trial or any other goal of the public trial right in any fashion. Longan fails to show that a public trial violation actually and substantially prejudiced him.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Longan next asserts five grounds supporting his claim of ineffective assistance of trial counsel. To prevail, Longan must show that (1) the defense counsel's conduct was deficient, *i.e.*, that it fell below an objective standard of reasonableness; and (2) such conduct prejudiced him, *i.e.*, that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have differed. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011).

A personal restraint petition must include as grounds for the requested relief a statement of the facts supporting the claim of unlawful restraint and the evidence available to support these factual allegations. RAP 16.7(a)(2)(i); *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988). The petitioner must state with particularity facts that, if proven, would entitle

7

him to relief, and he must present evidence showing that his factual allegations are based on more than speculation and conjecture. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086, *cert. denied,* 506 U.S. 958 (1992). Where the petition relies on conclusory allegations, we must decline to determine its validity. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813-14, 792 P.2d 506 (1990).

1. Public Trial Right

Longan claims that trial counsel's failure to object to the hallway discussion violated his right to effective assistance of counsel because it improperly closed the courtroom and prevented him from participating in his own defense. This claim fails because Longan voluntarily absented himself from the hallway discussion and because, as noted above, he cannot show prejudice.

2. Lack of Investigation

Longan claims that his trial counsel performed an inadequate investigation because he did not investigate the bullet holes displayed in the police photographs of his car after the pursuit. He claims that such an investigation may have revealed that the police shot back at the car, contrary to the testimony of the police officers involved in the chase.

In *In re Personal Restraint of Davis*, 152 Wn.2d 647, 721, 101 P.3d 1 (2004), our Supreme Court noted that an attorney breaches his duty to his client if he fails "'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2062, 80 L. Ed. 2d 674 (1984)). The court further explained that "[d]efense counsel must, 'at a minimum, *conduct a reasonable investigation* enabling [counsel] to make informed decisions about how best to represent [the] client.' This includes investigating all reasonable lines of defense, especially 'the defendant's

most important defense.'" *Id.* at 721 (alterations in original) (citing *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001)).

But Longan's claim here is purely speculative. He presents no evidence that the bullet holes in his car resulted during the car chase. As such, he fails to show that a reasonable investigation would have led to exculpatory evidence that could have changed the trial outcome. *Williams*, 111 Wn.2d at 365.

3. Medical Records

Longan next contends that defense counsel should have obtained his medical records from an earlier emergency room visit to show that he was recovering from stab wounds and had to wear a protective vest. He argues that this would have countered the State's claim that his "intent is to do battle." Verbatim Report of Proceedings (VRP) (cause no. 37942-2-II) (June 24, 2008) at 150.

But Longan does not provide these medical records and this court will not speculate as to their content. Longan simply fails to support his allegations with any evidence, and thus, his claim fails.

4. Testimony

Longan argues that trial counsel's failure to allow him to testify after assuring him that he would get a chance to testify amounted to ineffective assistance of counsel. He argues that had he been allowed to testify, he could have countered many of the State's claims by explaining that he was fearful for his life, that he did not know that his passenger had a gun, and that he needed the protective vest because he had been stabbed.

Counsel violates a defendant's right to testify if the decision not to testify is made against the defendant's will. *State v. Borsheim*, 140 Wn. App. 357, 375-76, 165 P.3d 417 (2007). But in

a post-trial assertion of such a violation, the defendant has the burden of showing involuntariness. *State v. Robinson*, 138 Wn.2d 753, 765, 982 P.2d 590 (1999). The *Robinson* court explained the defendant's evidentiary burden:

> We therefore conclude that in order to prove that an attorney actually prevented the defendant from testifying, the defendant must prove that the attorney refused to allow him to testify in the face of the defendant's unequivocal demands that he be allowed to do so. In the absence of such demands by the defendant, however, we will presume that the defendant elected not to take the stand upon the advice of counsel. If a defendant is able to prove by a preponderance of the evidence that his attorney actually prevented him from testifying, he will have established that the waiver of his constitutional right to testify was not knowing and voluntary.

*Id.* Other than his own self-serving statements, the record contains no evidence that trial counsel acted against Longan's demands. This is insufficient to support his claim. *Williams*, 111 Wn.2d at 365.

5. Interview Witnesses

Longan asserts that trial counsel provided ineffective assistance counsel by failing to interview and present four witnesses, which deprived him of a defense. He argues that these witnesses would have explained why he bought a protective vest and would have explained the history between the defendant and his co-defendant. He attached affidavits from these witnesses explaining how they would have testified. Each witness states that she would have testified that Longan is a good and caring person. Three witnesses state that Longan was wearing a protective vest because he had been recently stabbed in the back. And one witness states that Longan's co-defendant is manipulative and deceitful.

Longan's assertion of ineffective assistance of counsel fails for five reasons. First, ER 602 provides that a witness can only testify to matters within her personal knowledge. As none of the

witnesses were present during the offense, none could testify to Longan's state of mind at the time of the offense. In fact, none could provide any exculpatory testimony about the incident. They could only relate that he had a medical reason to wear a protective vest.

Second, had these witnesses presented character evidence on Longan's behalf, the State would have been able to introduce Longan's history of criminal behavior, possession of firearms, and drug use and sale. ER 404(a). Thus, it was a reasonable tactical choice to not have the jury learn of Longan's past misbehavior.

Third, defense counsel could reasonably have chosen not to introduce testimony about Longan's medical need to wear a protective vest because this too would have allowed the State to explore the details of this stabbing.

Fourth, defense counsel also may have reasonably decided that a jury would not find such testimony credible as the testimony at trial established that Longan drove purposefully, not guarding a painful injury, making hard turns to give his co-defendant a better shooting angle.

Finally, under ER 608(a)-(b), the trial court likely would have excluded the one witness's testimony about the co-defendant's trustworthiness. Longan simply fails to show that trial counsel's decisions fell below an objective standard or that trial counsel's choices deprived Longan of his right to effective assistance of counsel.

## C.   PROSECUTORIAL MISCONDUCT

Longan next asserts that the prosecutor's pretrial behavior amounted to reversible misconduct because the prosecutor refused to plea bargain and entered into a disproportionate plea bargain with his co-defendant. Specifically, he claims that his co-defendant was the more culpable

party and fired all of the shots at the police while he drove, yet she received only a 15-year sentence and the State's best offer to him was 29 years. He describes this as invidious discrimination.

Prosecutors have broad discretion in making charging decisions. *State v. Judge*, 100 Wn.2d 706, 713, 675 P.2d 219 (1984). Charging some but not others guilty of the same crime does not violate the equal protection clause unless the decision was made based on an unjustifiable standard such as race or religion. *Id.* Longan fails to make such a showing here.

The record shows that the State offered Longan a 29-year period of incarceration, dropping all but one of the firearm enhancements, and reducing the charges to three counts of first degree assault. Based on his criminal history, this was a mid-point standard range sentence. His co-defendant, on the other hand, had no criminal history and the 15-year sentence was a standard range sentence that included a firearm enhancement. Nothing before this court shows that the State treated him differently because he was a male. His claim fails.

D.   SPECIAL VERDICT INSTRUCTIONS

Longan next argues that his special verdict instructions were flawed, relying on *State v. Bashaw*, 169 Wn.2d 133, 234 P.3d 195 (2010), and *State v. Goldberg*, 149 Wn.2d 888, 72 P.3d 1083 (2003). But our Supreme Court overturned *Goldberg* and *Bashaw* in *State v Nunez*, 174 Wn.2d 707, 285 P.3d 21 (2012), so special verdict forms are no longer required to comply with the *Bashaw* nonunanimity rule. This claim fails.

E.   CUMULATIVE ERROR

Finally, Longan asserts that even if any single error was insufficient to deprive him of a fair trial, an accumulation of errors requires a new trial. A defendant may be entitled to a new trial when errors cumulatively produced at trial were fundamentally unfair. *In re Pers. Restraint of*

No. 41505-4-II

*Lord*, 123 Wn.2d 296, 332, 868 P.2d 835, *clarified by*, 123 Wn.2d 737 (1994) (citing *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir.), *cert. denied*, 464 U.S. 952 (1983)). The defendant bears the burden of proving an accumulation of error of sufficient magnitude that retrial is necessary. *Lord*, 123 Wn.2d at 332. Longan does not, and his claim fails.

We deny the petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Bjorgen, A.C.J.

Maxa, J.

13