IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32653-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRYAN JACOB STORMS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Bryan Storms appeals his conviction for vehicular homicide and four other crimes arising from an egregious motor vehicle collision. We affirm the convictions and the challenged basis for the exceptional sentence, but remand for re-sentencing because the State failed to establish an exigency that excused the need for a search warrant before drawing blood.

## FACTS

Mr. Storms, traveling at least 45 m.p.h. on a Spokane street in a Honda Civic while fleeing from a police officer, ran through a stop sign and smashed into a pickup truck driven by Kevin Smith at 12:25 p.m. on Sunday, February 10, 2013. The collision sent the truck into the air before it knocked down a telephone pole. Mr. Smith was killed at the scene. Two of the passengers in the Honda were injured.

Storms fled the scene on foot, but a witness was able to direct officers to him. The officer who took him into custody noted that Storms was sweating profusely and constantly moving his limbs and body. Two other officers took custody of Storms and conducted witness show ups. Meanwhile, emergency personnel had to take the two passengers out of the Honda for medical treatment. Many observers had to be cleared from the area and the accident scene secured. Ultimately, 23 officers took part in the crime scene investigation.

A "baggie" of white powder, believed to be methamphetamine, was observed by an officer. Medical personnel advised that Mr. Storms might need x-rays of his injuries. The sergeant in charge of the scene directed two officers to take Storms to the hospital and obtain a blood draw. They arrived at the hospital at 1:37 p.m. A drug recognition expert (DRE) drove in from Ritzville, but Mr. Storms refused to submit to DRE testing. Ultimately, blood was drown over the objection of Mr. Storms at 2:16 p.m. Subsequent analysis revealed the presence of amphetamine and methamphetamine in the blood.

Three days after the accident, the prosecutor filed the four felony driving charges. In each instance, it was alleged that an aggravating factor was present due to the multiple current offenses and the defendant's high offender score. In addition, it was alleged that

2

the victim in count three suffered injuries more substantial than required to establish the crime.[1]

The defense moved to suppress the results of the blood draw, arguing that a search warrant had been required to take the defendant's blood and that exigent circumstances did not exist to excuse the failure. Rather than defending on the basis of the implied consent statute, the State argued that exigent circumstances had existed. The trial court ultimately agreed, concluding that exigencies existed due to the length of time needed to obtain a search warrant, the dissipation of substances in the defendant's blood, and the fear that medical treatment would further delay seizure of the blood.

The case proceeded to jury trial one year after the incident. A jury found Storms guilty as charged of vehicular homicide, two counts of vehicular assault, and one count of felony hit and run (fatality). Jury interrogatories on the first three counts indicated the jury's unanimous agreement that Storms had committed each crime by all methods alleged in the charging documents—by driving while under the influence (DUI), while driving in a reckless manner, and while driving with disregard for the safety of others. The jury also returned a special verdict on count three finding that the injuries to victim

---

[1] The information subsequently was amended to add a count of driving while license suspended in the third degree. The defendant pleaded guilty to that count prior to trial.

Lynn Blumer substantially exceeded the level of bodily harm necessary to establish substantial bodily injury.

The matter proceeded to sentencing. The court found that both charged aggravating factors existed and declared an exceptional sentence. The court imposed a total term of 448 months by running the standard range sentences on the first three counts consecutively. Mr. Storms timely appealed to this court. Appropriate findings in support of the suppression ruling and the exceptional sentence were entered.

Appointed counsel filed a brief solely attacking the evidence supporting the special verdict on count three. Mr. Storms filed a statement of additional grounds (SAG) challenging the court's ruling on the suppression hearing. This court directed both counsel to brief the exigent circumstances issue, and then to file supplemental briefs as additional opinions were released by the United States and Washington Supreme Courts. Ultimately, the matter proceeded to argument before a panel of this court.

## ANALYSIS

We consider first the issue initially presented by the SAG before turning to the sufficiency of the evidence to support the special verdict.

*Exigent Circumstances*

This issue is complicated by the fact that the United States Supreme Court may, or may not, have changed the rules governing this situation after the arrest in this case. Believing that the rules had changed, the State tried to justify the blood draw on the basis

4

of a theory officers had not relied on during the arrest. We disagree that the State established an exigency excusing the need to obtain a search warrant for Mr. Storms' blood.

As it existed at the time of the arrest in this case, Washington's implied consent statute provided:

> Except as provided in this section, the test administered shall be of the breath only. If an individual is unconscious or is under arrest for the crime of felony driving under the influence of intoxicating liquor or drugs under RCW 46.61.502(6), felony physical control of a motor vehicle while under the influence of intoxicating liquor or any drug under RCW 46.61.504(6), vehicular homicide as provided in RCW 46.61.520, or vehicular assault as provided in RCW 46.61.522, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.502, which arrest results from an accident in which there has been serious bodily injury to another person, a breath or blood test may be administered without the consent of the individual so arrested.

Former RCW 46.20.308(3) (2012). As written, the statute removed the ability of certain defendants to revoke their consent to alcohol testing. *State v. Judge*, 100 Wn.2d 706, 710-711, 675 P.2d 219 (1984).

After charges were filed in this case, the United States Supreme Court issued its decision in *Missouri v. McNeely*, 569 U.S. __, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013). There the court concluded that the natural dissipation of alcohol in the bloodstream alone did not justify a warrantless blood draw of a DUI suspect. 185 L. Ed. 2d at 702. The court revisited its decision in *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), given the technological developments of the past half century. *Id.*

5

The court also noted that, unlike Missouri, many states such as Washington had chosen to limit the circumstances in which nonconsensual blood draws could be taken. *Id.* at 713 n.9. It ultimately held that the Fourth Amendment requires officers obtain a warrant where they can do so within a reasonable time, and where it will not "significantly" undermine "the efficacy of the search." *Id.* at 707.

In response to *McNeely*, the Washington Legislature promptly amended the implied consent statute. The second sentence of RCW 46.20.308(3) was changed to read the breath or blood test could be administered without consent "pursuant to a search warrant, a valid waiver of the warrant requirement, or when exigent circumstances exist." LAWS OF 2013, 2d Sp. Sess., ch. 35, § 36.[2] This version of the statute was in effect at the time of the suppression hearing held in this case.

Before turning to the exigency argument, it is important first to note what we are *not* deciding. The State has eschewed reliance on the former implied consent statute both in the trial court and in briefing to this court. Accordingly, the validity of the former implied consent statute's authorization of mandatory testing without consent is not before us. The State has chosen solely to rely on the exigency exception to the search warrant requirement.

---

[2] The legislature deleted existing RCW 46.20.308(3) and enacted a similar provision, RCW 46.20.308(4) in 2015. *See* LAWS OF 2015, 2d Sp. Sess. ch. 3, § 5.

Exigent circumstances excuse the need for a warrant where it is not practical for the State to obtain a warrant because the inherent delay would "compromise officer safety, facilitate escape or permit the destruction of evidence." *State v. Smith*, 165 Wn.2d 511, 517, 199 P.3d 386 (2009) (internal quotation marks omitted). In certain circumstances, the mobility or destruction of evidence can be considered an exigent circumstance. *State v. Counts*, 99 Wn.2d 54, 60, 659 P.2d 1087 (1983); *State v. Komoto*, 40 Wn. App. 200, 207-208, 697 P.2d 1025 (1985). Specifically, the need for naturally dissipating evidence in the body, such as blood alcohol, can support a finding of exigent circumstances. *McNeely*, 185 L. Ed. 2d at 709. However, the court must look at the totality of the circumstances. *Id.* The State bears the burden of establishing the exigency. *State v. Tibbles*, 169 Wn.2d 364, 369, 236 P.3d 885 (2010).[3]

The trial court found that the exigent circumstances justifying the warrantless blood draw in this case were the length of time to obtain a warrant and the potential delay resulting from expected medical treatment. Neither factor establishes why a warrant was not a practical answer in this case.

---

[3] The State also bears the burden of establishing probable cause to believe evidence of the crime will be found. *Komoto*, 40 Wn. App. at 206. The record overwhelmingly established probable cause to believe that Mr. Storms was under the influence at the time of the accident. His pro se arguments to the contrary are meritless and will not be further discussed in light of our ultimate conclusion.

Although the State presented testimony that it could have taken as much as four hours to write, obtain, and execute the warrant on a Sunday afternoon, it failed to address other, more practical approaches to obtaining a warrant. For instance, Washington permits communication of search warrant authority "by any reliable means." CrR 2.3(c). There is no indication that an officer could not have contacted a judge by telephone, fax machine, or e-mail in an effort to promptly obtain judicial authorization for a search. There also is no indication that 1 of the 23 officers could not have begun work on seeking a warrant shortly after the defendant's arrest. If all were needed to perform emergency services at the scene such as tending to victims, assisting aid personnel, or directing traffic, evidence of that fact could have been presented at the suppression hearing. There was no such evidence. In short, there needed to be some evidence explaining why other alternatives would not have worked, in addition to explaining why the officers did what they did.

Similarly, the fact that officers reasonably expected the defendant to undergo x-rays is not a particularly compelling fact. X-rays typically do not take much time nor require treating the defendant prior to the examination. If particularly involved procedures were anticipated, evidence of that fact could have been presented. Indeed, with the benefit of hindsight, evidence establishing what procedures the defendant did undergo and how those would have delayed blood testing might have established this factor. If, for instance, the defendant was expected to undergo a lengthy surgery, or had

8

actually done so, that evidence might well have justified reliance on pending medical treatment as an exigency. However, in this record there is no indication the defendant underwent any treatment, let alone significantly lengthy treatment.

In sum, the evidence does not support the trial court's conclusion that a warrantless blood draw was the only practical method of proceeding on this occasion.[4] The State has not satisfied its burden that an exigent circumstance exists. It presented no evidence that a telephonic warrant was unavailable, nor did it explain why one officer could not seek a warrant while another officer transported Mr. Storms. Both the holding and reasoning of *McNeely* weigh against finding an exigent circumstance on this record. A warrantless blood draw might have been justified here, but this record simply does not support that conclusion.

Accordingly, the trial court erred when it denied the motion to suppress the blood draw. We also conclude that the error was not harmless with respect to the under the influence prong of the vehicular homicide and vehicular assault convictions. While there was ample evidence suggesting impairment from the testimony of responding officers, the strongest and most objective evidence of impairment came from the blood test results.

---

[4] Another factor on which evidence was lacking concerned the dissipation rate of controlled substances. Here, the authorities reasonably suspected use of methamphetamine, but presented no evidence whether that substance or other street drugs were subject to rapid dissipation.

9

No. 32653-5-III
*State v. Storms*

Accordingly, we cannot conclude that the blood test evidence did not affect the verdict on the under the influence prong of the three offenses. However, that evidence did not affect the verdict on the reckless manner and disregard for the safety of others prongs. The jury was told to consider the offenses separately and the impairment evidence had no particular relevance to the other two prongs. Moreover, the details of the collision (speed, ignoring a stop sign) were not in dispute; both the State and defense experts concurred on the facts of the incident.[5] The evidence overwhelmingly backed the reckless manner and disregard of safety of others prongs of the three charges. We conclude that error in the admission of the blood test results was harmless beyond a reasonable doubt as to the other prongs of the offenses. The special interrogatory answers were not tainted by the blood examination results.

The remaining question is the remedy. The State would be entitled to retry the charges on the under the influence theory because ample evidence still exists to support a jury verdict. However, the prosecutor at oral argument elected to have the case re-sentenced rather than retried in the event that the blood test was suppressed. Since the State is waiving its opportunity to retry the case, we remand for resentencing on the other prongs of the three offenses.

---

[5] The defense closing argument noted that the experts agreed and was focused nearly entirely on disputing whether the State had established the impairment prong of the charges.

10

*Aggravating Factors*

The remaining issue for consideration is the defense claim that the evidence did not support the jury's special verdict that the injuries suffered by Ms. Blumer were substantially greater than necessary to establish substantial bodily injury.[6] The evidence supports the jury's verdict.

Whether the evidence supports a jury's special verdict is reviewed for substantial evidence. *State v. DeLeon*, 185 Wn. App. 171, 212, 341 P.3d 315 (2014). Evidence is sufficient where the jury could find each element proved beyond a reasonable doubt. *Id.* This court reviews the evidence in the light most favorable to the State. *State v. Hacheney*, 160 Wn.2d 503, 512, 158 P.3d 1152 (2007).

RCW 9.94A.535(3)(y) provides that it is an aggravating factor that a "victim's injuries substantially exceeded the level of bodily harm necessary to satisfy the elements of the offense." To establish vehicular assault, the State was required to prove "substantial bodily harm to another." RCW 46.61.522. "Substantial bodily harm means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b) (internal quotation

---

[6] The defense does not challenge the trial court's finding that the "free crimes" aggravator was present on all four felony offenses. RCW 9.94A.535(2)(c).

marks omitted). The harm to the victim does not need to reach the next statutory category of harm to satisfy the "substantially exceed" test. *State v. Pappas*, 176 Wn.2d 188, 192, 289 P.3d 634 (2012).

The evidence supports the jury's verdict. Ms. Blumer suffered a traumatic brain injury that was still symptomatic a year after the crash. A doctor also testified that the impaired cognitive function from these injuries usually last a year but can be permanent. "Great bodily harm" is satisfied where the victim suffers an injury that causes "permanent loss or impairment . . . of any bodily part or organ." RCW 9A.04.110(4)(c). Because of her long-term cognitive dysfunction, Ms. Blumer's injuries almost reach "great bodily harm." This fact indicates they substantially exceed substantial bodily harm. *See Pappas*, 176 Wn.2d at 192 ("While the jump between statutory categories of harm necessarily meets the 'substantially exceed' test, injuries can 'substantially exceed' one category of harm without reaching the severity of the next category.").

The evidence allowed the jury to find that Ms. Blumer suffered injuries that significantly exceeded the level of bodily harm necessary to establish the offense. The evidence thus was sufficient to support the jury's special verdict.

The convictions are affirmed, but the three jury interrogatories that concluded the crimes were committed while under the influence are reversed. The aggravating factors found by the jury and the court are affirmed. The case is remanded for resentencing.

12

No. 32653-5-III
*State v. Storms*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.

13