[No. 29765-5-II. Division Two. January 19, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. LEON EDWARD MEEKINS, *Appellant*.

*Pattie Mhoon*, for appellant.

*Gerald A. Horne, Prosecuting Attorney, Miry Kim, Deputy*, and *Jennifer Steele, Legal Intern*, for respondent.

¶1 MORGAN, A.C.J. — Leon Edward Meekins appeals his conviction for vehicular homicide. He argues (1) that the trial court instructed improperly on causation; (2) that he should have been allowed to show that the victim, a motorcycle rider, probably would not have died if he had been wearing a helmet; (3) that the evidence is insufficient to show that the victim died from injuries suffered in the accident; and (4) that a blood test was admitted without proper foundation. We reverse and remand.

¶2 Around dusk on May 31, 2001, Leon Edward Meekins was driving home after eating at a restaurant in Puyallup. While proceeding northbound on 78th Avenue East, he approached its intersection with 156th Street East. He activated his turn signal, stopped and looked for oncoming traffic, then began a left turn onto 156th. While turning, he collided with a Honda Gold Wing motorcycle that was proceeding southbound on 78th. The driver of the motorcycle, Lane Schwieger, was thrown to the ground, suffered a head injury, and died at the scene. Schwieger was not wearing a helmet, and it is not clear whether his headlight was on.

¶3 Deputy Robinson arrived and asked Meekins to take a blood test. When Meekins agreed, the two of them went to

Good Samaritan Hospital, where a medical technician drew some of Meekins' blood into two gray-topped tubes that Robinson supplied. When Meekins' blood was tested for alcohol, it yielded a result of 0.11.

¶4 On November 27, 2001, the State charged Meekins with vehicular homicide. It alleged that Meekins "operate[d] a motor vehicle while under the influence of intoxicating liquor . . . , and while so operating said vehicle did cause injuries to Lane Schwieger, who died on or about May 31, 2001, as a proximate result of the injuries received."[1]

¶5 Before trial, Meekins offered to have Dr. John Howard, M.D., the Pierce County Medical Examiner, testify that Schwieger's death had been caused by brain trauma which, in turn, had been caused by Schwieger's head hitting the pavement after the collision. Dr. Howard also would have testified that but for Schwieger's lack of a helmet, he more probably than not "would not have died as a result of his injuries."[2] The trial court excluded the offer, reasoning that Schwieger's "failure to wear a helmet was not a superseding intervening act, nor was it the sole proximate cause of the death."[3] Later, at trial, the State did not present any medical evidence on the cause of Schwieger's death.[4]

¶6 In October 2002, the court held a jury trial that involved a number of witnesses. Jessica Buzard testified that a stop sign requires eastbound traffic to stop before entering 78th. She was eastbound, approached that sign, and "totally stopped."[5] Then:

A: . . . I looked to my right and I saw a car coming down the hill, so I just waited, and the car was turning. And then I looked

---

[1] Clerk's Papers (CP) at 1.

[2] CP at 8.

[3] CP at 8.

[4] The State candidly told the court that it was opting not to present medical evidence because it did not want the jury to know that Schwieger had not been wearing a helmet. 6 Report of Proceedings (RP) at 515.

[5] 4 RP at 205.

up and I saw that there was a motorcycle right there, and the car and the motorcycle just collided into each other.

Q [by the prosecutor]: . . . Did you see where the motorcycle was prior to the collision?

A: No.

. . . .

Q: Prior to the collision were the lights on the motorcycle on?

A: I didn't see them, no.

Q: . . . Did you see that they were off or you didn't see that they—

A: . . . I didn't see them at all.[6]

Buzard watched as the car and the motorcycle collided and as Schwieger flew off the motorcycle and hit the ground. She went to help him and turned off the motorcycle's motor, which was still running after it came to rest.

¶7 Anthony Adelizzi and his passenger, Michelle Burda, testified they had been following the motorcycle south on 78th Avenue. Neither noticed whether the motorcycle's lights were on. Adelizzi saw the car and motorcycle collide, although Burda did not.

¶8 Deputy Jack Amman testified that a few weeks prior to the accident, he had stopped Schwieger for driving the same motorcycle with the headlight off. Schwieger "popped the fuse out of the fuse block, put a new fuse in the fuse block and [the] headlight worked."[7] When Amman inspected the headlight three days after the collision in issue here, he found nothing wrong with it, but he had no way to know whether it had been on just prior to the collision.

¶9 Deputy Evans, an accident reconstructionist with the Pierce County Sheriff's Department, testified that he checked the motorcycle's headlight after the accident. He found nothing wrong with it, but he also had no way to know whether the headlight had been on just prior to the collision.

---

[6] 4 RP at 204-07.

[7] 5 RP at 348.

¶10 Meekins testified on his own behalf. When asked whether he had seen a headlight, he said, "No, I didn't."[8]

¶11 At the end of the evidence, the trial court instructed on the elements of vehicular homicide. It stated in Instruction 7:

> To convict the defendant of the crime of vehicular homicide, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the 31st day of May, 2001, the defendant drove or operated a motor vehicle;
>
> (2) That the defendant's driving proximately caused injury to another person;
>
> (3) That at the time of causing the injury, the defendant was operating the motor vehicle while under the influence of intoxicating liquor;
>
> (4) That the injured person died as a proximate result of the injuries; and
>
> (5) That the injury occurred in the State of Washington.[9]

¶12 Over defense objection, the trial court also gave Instructions 13, 14, and 15. It stated in Instruction 13 that "[c]ontributory negligence is negligence on the part of a person claiming injury or damage which is a proximate cause of the injury or damage complained of."[10] It stated in Instruction 14 that negligence "is the doing of some act which a reasonably careful person would not do under the same or similar circumstances or the failure to do something which a reasonably careful person would have done under the same or similar circumstances."[11] It stated in Instruction 15 that "[c]ontributory negligence is not a defense to vehicular homicide."[12] It did not tell the jury that "[e]vidence of contributory negligence may be material to

---

[8] 6 RP at 549.

[9] CP at 46.

[10] CP at 52.

[11] CP at 53.

[12] CP at 54.

whether the defendant's negligence was a proximate cause of the death."[13] The jury found Meekins guilty, and the trial court imposed a standard-range sentence.

■ ¶13 RCW 46.61.520 defines vehicular homicide. It provides that "[w]hen the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle . . . [w]hile under the influence of intoxicating liquor . . . ." Thus, RCW 46.61.520 requires proof beyond a reasonable doubt that the defendant's driving was a proximate cause of the victim's injury, and that the victim's injury was a proximate cause of the victim's death.

¶14 Meekins raises two issues pertaining to proximate cause. First, he argues that Instructions 13, 14, and 15 did not accurately inform the jury that if it had a reasonable doubt on whether Schwieger was running his headlight, it could consider that when deciding whether Meekins' driving was a proximate cause of Schwieger's harm.[14] Second, Meekins argues that he should have been permitted to introduce evidence on whether Schwieger's failure to wear a helmet was a proximate cause of harm to Schwieger.

■ ¶15 In general, according to the Washington courts, a defendant's conduct is a "proximate cause" of harm to another if, in direct sequence, unbroken by any new independent cause, it produces the harm, and without it the harm would not have happened.[15] Alternatively, according to the *Restatement (Second) of Torts* (hereafter *Restatement*), a defendant's conduct is a "proximate cause" of harm if it "is a substantial factor in bringing about the harm" and

---

[13] *State v. Judge*, 100 Wn.2d 706, 718, 675 P.2d 219 (1984).

[14] *See Judge*, 100 Wn.2d at 718.

[15] *Hertog v. City of Seattle*, 138 Wn.2d 265, 282-83, 979 P.2d 400 (1999); *Hoffer v. State*, 110 Wn.2d 415, 424, 755 P.2d 781 (1988); *Stevens v. Gordon*, 118 Wn. App. 43, 52, 74 P.3d 653 (2003).

no other rule relieves him from liability,[16] unless the harm would have been sustained even without his conduct.[17]

■ ¶16 When deciding whether a defendant's conduct is a proximate cause beyond a reasonable doubt, the jury must assess all the material facts and circumstances.[18] The alleged victim's conduct is one such circumstance, and thus the jury may consider it when deciding whether the defendant's conduct was a proximate cause, *regardless* of whether the alleged victim's conduct constituted contributory negligence.[19]

¶17 A defendant's conduct is not a proximate cause if some other cause was the sole cause.[20] Hence, evidence is relevant (i.e., has a tendency to prove a fact of consequence to the action[21]) if it tends to show that the alleged victim's conduct was the *sole* proximate cause of the harm that he or she suffered,[22] regardless of whether that conduct was contributorily negligent.[23]

¶18 A defendant's conduct is not a proximate cause if, although it otherwise might have been a proximate cause, a

---

[16] RESTATEMENT (SECOND) OF TORTS § 431 (1965); *see also State v. Rivas*, 126 Wn.2d 443, 453, 896 P.2d 57 (1995) ("defendant's conduct must be the 'legal' or 'proximate' cause of the result"; "conduct of the defendant must be both (1) the actual cause, and (2) the 'legal' or 'proximate' cause").

[17] RESTATEMENT (SECOND) OF TORTS § 432 (1965).

[18] *Hosea v. City of Seattle*, 64 Wn.2d 678, 683, 393 P.2d 967 (1964) (in order to determine proximate cause the "jury . . . must weigh and weight factors, values, facts and circumstances presented in a given case"); *Everest v. Riecken*, 26 Wn.2d 542, 548, 174 P.2d 762 (1946) (the issue of proximate cause is " 'generally a question of fact for the jury to find from all the pertinent facts and circumstances' ") (quoting *Miles v. State*, 174 Md. 292, 300, 198 A. 724 (1938)).

[19] *See Judge*, 100 Wn.2d at 718.

[20] *Nielson v. Eisenhower & Carlson*, 100 Wn. App. 584, 593, 999 P.2d 42, *review denied*, 141 Wn.2d 1016 (2000); *State v. Hursh*, 77 Wn. App. 242, 245, 890 P.2d 1066, *review denied*, 126 Wn.2d 1025 (1995); *State v. Neher*, 52 Wn. App. 298, 301 n.3, 759 P.2d 475 (1988) *aff'd*, 112 Wn.2d 347, 771 P.2d 330 (1989).

[21] ER 401.

[22] *Nielson*, 100 Wn. App. at 593; *Hursh*, 77 Wn. App. at 245; *Neher*, 52 Wn. App. at 301 n.3.

[23] *Judge*, 100 Wn.2d at 718 ("contributory negligence is not a defense[,]" but "[e]vidence of [it] may be material to whether the defendant's negligence was a proximate cause").

superseding cause intervenes. According to both the Washington courts and the *Restatement*, "[a] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."[24] According to those same entities, "[a]n intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed."[25] As the *Restatement* comments:

> A superseding cause relieves the actor from liability, *irrespective of whether his antecedent negligence was or was not a substantial factor* [i.e., a proximate cause] *in bringing about the harm*. Therefore, if . . . a superseding cause has operated, there is no need of determining whether the actor's antecedent conduct was or was not a substantial factor [i.e., a proximate cause] in bringing about the harm.[26]

¶19 Although a defendant's conduct is not a proximate cause if some other cause is a sole or superseding cause, it can be a proximate cause if another cause is merely a concurrent cause. The same harm can have more than one

---

[24] RESTATEMENT (SECOND) OF TORTS § 440 (1965); *Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 812, 733 P.2d 969 (1987).

[25] RESTATEMENT (SECOND) OF TORTS § 441(1) (1965); *State v. Souther*, 100 Wn. App. 701, 710, 998 P.2d 350, *review denied*, 142 Wn.2d 1006 (2000); *State v. Roggenkamp*, 115 Wn. App. 927, 945, 64 P.3d 92, *review granted*, 150 Wn.2d 1009 (2003) (quoting RESTATEMENT § 441(1) cmt. a); *Bullard v. Bailey*, 91 Wn. App. 750, 758, 959 P.2d 1122 (1998), *review denied*, 137 Wn.2d 1014 (1999) (quoting WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS, 270-71 (4th ed. 1971)).

[26] RESTATEMENT (SECOND) OF TORTS § 440 cmt. b (1965) (emphasis added). *Accord Campbell*, 107 Wn.2d at 812 (superseding cause " 'prevents the actor from being liable for harm to another *which his antecedent negligence is a substantial factor* [i.e., a proximate cause] *in bringing about*' ") (quoting RESTATEMENT (SECOND) OF TORTS § 440 (1965)) (emphasis added); *Roggenkamp*, 115 Wn. App. at 945 (superseding cause relieves defendant of liability); *Anderson v. Dreis & Krump Mfg. Corp.*, 48 Wn. App. 432, 442, 739 P.2d 1177, *review denied*, 109 Wn.2d 1006 (1987) (doctrine of superseding cause applies "where the act of a third party intervenes between the defendant's original conduct and the plaintiff's injury such that the defendant may no longer be deemed responsible for the injury"); *cf. Smith v. Acme Paving Co.*, 16 Wn. App. 389, 396, 558 P.2d 811 (1976) (original conduct not superseded if intervening conduct foreseeable).

proximate cause,[27] and evidence is not relevant (i.e., has no tendency to prove a fact of consequence to the action[28]) if it shows only that the defendant's conduct and some other cause operated concurrently.[29]

■ ■ ¶20 Meekins contends that Instructions 13, 14, and 15 improperly barred the jury from considering whether Schwieger's lack of a headlight (if any) might have been the sole cause of Schwieger's injuries. We agree. Instruction 13 stated that "[c]ontributory negligence is negligence on the part of a person claiming injury or damage which is a proximate cause of the injury or damage complained of."[30] Instruction 15 stated that "[c]ontributory negligence is not a defense to vehicular homicide."[31] No instruction stated that under Washington law, the jury was permitted but not required to consider Schwieger's lack of a headlight (if any) when deciding whether Meekins' driving was a proximate cause of Schwieger's harm, even if such failure was contributory negligence.[32]

¶21 The State argues that the jury instructions were accurate when read as a whole. It relies on Instructions 11 and 12. As Meekins correctly points out, however, Instructions 11 and 12 did not complement or explain, but rather conflicted with, Instructions 13, 14, and 15. Instructions 11 and 12 told the jury that it must acquit if it found that "the motorcycle headlight was not illuminated,"[33] and that this was "a cause without which the accident would not have occurred."[34] Instructions 13, 14, and 15 told the jury that it

---

[27] *Riojas v. Grant County Pub. Util. Dist.*, 117 Wn. App. 694, 699, 72 P.3d 1093 (2003), *review denied*, 151 Wn.2d 1006 (2004); *State v. Leech*, 114 Wn.2d 700, 705, 790 P.2d 160 (1990); *Neher*, 52 Wn. App. at 301; *Smith*, 16 Wn. App. at 396.

[28] ER 401.

[29] *Souther*, 100 Wn. App. at 710-11; *Hursh*, 77 Wn. App. at 245.

[30] CP at 52.

[31] CP at 54.

[32] *See Judge*, 100 Wn.2d at 718.

[33] CP at 50.

[34] CP at 51.

could not even consider Schwieger's lack of a headlight if it believed (as it likely would have) that driving a motorcycle at dusk without lights was contributorily negligent. Read as a whole, these instructions told the jury that it should acquit if Schwieger had failed to display a headlight, provided that such failure was a "supervening" cause, and provided further—since "[c]ontributory negligence [was] not a defense"[35]—that such failure was *not* contributory negligence. This misstated the rule that an alleged victim's conduct can bear on proximate cause whether or not it is contributory negligence;[36] it may have misled the jury, and we cannot say that Meekins had a fair trial.

¶22 Citing *State v. Souther*,[37] the State argues that Schwieger's failure to display a headlight cannot have been a *superseding* cause, and thus that "even if there was error, the error was harmless beyond a reasonable doubt."[38] The argument fails because if the jury had chosen to take the evidence in the light most favorable to Meekins,[39] the jury could properly have reasoned, whether or not Schwieger's failure to display a headlight was a *superseding* cause, that Schwieger's failure to display a headlight was the *sole* cause. Given the evidence and proper instructions, the jury could have found that Schwieger was driving a motorcycle around dusk without a headlight; that a reasonable person in Meekins' shoes would not have seen Schwieger in time to avoid turning in front of him (and thus that Meekins' driving was not a factual cause of harm to Schwieger); that Schwieger's failure to display a headlight might have been the *sole* proximate cause of harm to Schwieger; and thus that there was reasonable doubt about whether Meekins' driving was a proximate cause of harm to Schwieger. Instructions 13, 14, and 15 improperly precluded the jury

---

[35] CP at 54.

[36] *See Judge*, 100 Wn.2d at 718.

[37] 100 Wn. App. 701, 998 P.2d 350 (2000).

[38] Br. of Resp't at 15.

[39] *See State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).

from reasoning this way when they stated, flatly and without exception, that "contributory negligence is not a defense." Instructions 13, 14, and 15 were not harmless.

¶23 For these same reasons, *Souther* and this case are distinguishable. Assuming without holding that the *Souther* court correctly ruled that a victim's preexisting excessive speed can be a concurrent but not a superseding cause, it did not consider or discuss the dispositive issue here: whether the victim's preexisting conduct (e.g., failure to display a headlight) can be the *sole* proximate cause of the victim's harm, and, if it can be, whether it can give rise to reasonable doubt on the proximate cause elements of RCW 46.61.520 *regardless* of whether it is also a superseding cause.

¶24 In addition to contending that the instructions were defective, Meekins contends that the trial court improperly prevented him from introducing evidence that Schwieger was not wearing a helmet and from calling Dr. Howard to testify that if Schwieger had been wearing a helmet, Schwieger probably would not have died. Given this record, however, we perceive no way in which Schwieger's lack of a helmet could have been a proximate cause without Meekins' driving also being a proximate cause. Thus, the evidence Meekins was offering had no tendency to prove that Schwieger's lack of a helmet was the sole or a superseding proximate cause; at best from Meekins' point of view, it tended to show only that Schwieger's lack of a helmet was a concurrent proximate cause.[40] Concluding that the offered evidence was irrelevant, we decline to disturb the trial court's rulings on this issue.

¶25 Next, Meekins contends that the evidence is not sufficient to support the jury's verdict because the State failed to produce a medical doctor's opinion on cause of death. We address this issue because, if Meekins is right, he is entitled to dismissal rather than remand. Evidence is

---

[40] *See Hursh*, 77 Wn. App. at 244-45 (trial court properly excluded evidence showing failure to wear a seat belt because jury could not have found that such failure was sole cause of victim's injuries).

sufficient to prove a disputed fact if a rational trier of fact taking it in the light most favorable to the State could find that fact beyond a reasonable doubt.[41] The precise question here is whether a rational trier of fact taking the evidence in the light most favorable to the State could find, without evidence from a doctor, that Schwieger died as a result of injuries suffered in the accident. Answering yes, we hold that the evidence is sufficient.

¶26 Finally, Meekins argues that the blood test result should have been excluded due to lack of a proper foundation. We decline to reach this issue because we expect the State to cure any foundational deficiency on remand. We expect, for example, that the State will explain, more clearly than in the present record, why the state toxicologist requires replicate testing, and whether and how the State met that requirement in this case. As several of our courts have recently observed, the State must strictly "abide by its own rules,"[42] including those promulgated by the state toxicologist.[43]

¶27 Reversed and remanded for further proceedings.

HUNT and VAN DEREN, JJ., concur.

---

[41] *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004); *State v. Joy*, 121 Wn.2d 333, 338-39, 851 P.2d 654 (1993); *State v. Holt*, 119 Wn. App. 712, 720, 82 P.3d 688 (2004).

[42] *City of Seattle v. Clark-Munoz*, 152 Wn.2d 39, 50, 93 P.3d 141 (2004).

[43] *State v. Hultenschmidt*, 125 Wn. App. 259, 102 P.3d 192 (2004); *State v. Bosio*, 107 Wn. App. 462, 467-68, 27 P.3d 636 (2001); *State v. Garrett*, 80 Wn. App. 651, 652-54, 910 P.2d 552 (1996).