# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49231-8-II |
| Respondent, | |
| v. | |
| JOSHUA CANE FRAHM, | PUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Joshua Cane Frahm's vehicle rear-ended another vehicle which caused it to lose control. It became disabled in the roadway. Frahm did not stop. A third vehicle struck the disabled vehicle, which resulted in the death of a Good Samaritan.

Frahm appeals from his convictions for vehicular homicide, vehicular assault, hit and run, false reporting, and conspiracy to commit perjury. Frahm argues he received ineffective assistance of counsel, and that insufficient evidence supports his vehicular homicide and conspiracy to commit perjury convictions. He also raises four assertions in his statement of additional grounds (SAG). We affirm.

## FACTS

Shortly before dawn on December 7, 2014, a Ford F-150 truck driven by Frahm rear-ended a Honda CR-V sport utility vehicle (SUV) driven by Steven Klase. The impact caused the SUV to spin out of control, strike a concrete barrier in the freeway median, and come to rest partially blocking the left and middle lanes of I-205. Klase sustained serious injuries and remained in his vehicle. Frahm fled the scene.

An eyewitness, Richard Irvine, stopped his vehicle on the right shoulder. Irvine activated his vehicle's emergency flashers, exited his vehicle, and crossed the freeway on foot. Seeing Klase's injuries, Irvine called 911. While Irvine spoke with a 911 dispatcher, a Honda Odyssey minivan driven by Fredy Dela Cruz-Moreno approached in the left lane. Cruz-Moreno's minivan struck Klase's vehicle and propelled it into Irvine. As a result, Irvine died.

Later that same day, Frahm, the registered owner of the F-150, contacted police to report his vehicle as stolen. When the police later recovered Frahm's truck, it had front end damage.

The police processed the vehicle, and Frahm's DNA (deoxyribonucleic acid) matched DNA taken from the deployed airbag. The police interrogated Frahm, and he maintained both that his truck had been stolen and that he had not been driving at the time of the accident.

In February 2015, a witness, Dusty Nielsen, contacted the police. Nielsen provided an alibi for Frahm for the time of the accident. Nielsen lied. Frahm had not been with Nielsen the night of the accident. The two men did not know each other until they met in jail, after the accident. When questioned by police about discrepancies in his story, Nielsen recanted. He insisted that he alone came up with the idea to provide the false alibi.

The State charged Frahm with six crimes: vehicular homicide, manslaughter in the first degree, vehicular assault, hit and run, false reporting, and conspiracy to commit perjury in the first degree.

At trial, and without objection, the State played an unredacted recording of Frahm's interrogation by the police. During the interrogation, the police repeatedly accused Frahm of lying. Frahm admitted to drinking the night before the accident but iterated that somebody stole his truck, and that he was not the driver at the time of the accident.

The jury convicted Frahm of vehicular homicide, vehicular assault, hit and run, false reporting, and conspiracy to commit perjury.[1] The court imposed a standard range sentence. Frahm appeals.[2]

## ANALYSIS

I.  SUFFICIENCY OF THE EVIDENCE

A.  Legal Principles

The State has the burden to prove every element of every crime charged beyond a reasonable doubt. U.S. CONST. amend. XIV, § 1; *In re the Matter of Winship*, 397 U.S. 358, 362-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Evidence is sufficient if, when viewing the evidence in the light most favorable to the State, "'*any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt*.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2791, 61 L. Ed. 2d 560 (1979)). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

B.  Sufficient Evidence Supports the Vehicular Homicide Conviction

Frahm argues that the evidence did not support the jury's finding that his actions proximately caused Irvine's death. Frahm asserts that Irvine's acts of stopping his car and crossing the freeway to render aid to Klase constituted a superseding, intervening cause. In a separate SAG,

---

[1] After the State presented its case in chief, the trial court granted Frahm's motion to dismiss the manslaughter in the first degree charge due to insufficient evidence.

[2] Frahm also raises appellate costs as an issue. However, the State is not seeking costs and we do not impose them.

Frahm also argues that the secondary collision between Cruz-Moreno's minivan and Klase's disabled SUV also broke the causal chain as a superseding cause. We disagree.

A driver is guilty of vehicular homicide "[w]hen the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person." RCW 46.61.520(1).

Legal causation, "'involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact. If the factual elements of the tort are proved, determination of legal liability will be dependent on 'mixed considerations of logic, common sense, justice, policy, and precedent.'" *State v. Bauer*, 180 Wn.2d 929, 936, 329 P.3d 67 (2014) (internal quotation marks omitted) (quoting *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985)).

A defendant's conduct is a "'proximate cause' of harm to another if, in direct sequence, unbroken by any new independent cause, it produces the harm, and without it the harm would not have happened." *State v. Meekins*, 125 Wn. App. 390, 396, 105 P.3d 420 (2005). A defendant need not be the sole cause of the harm to be held responsible. However, a defendant's conduct will not be considered a proximate cause of the harm if a superseding cause intervenes.

The court properly instructed the jury that, "There may be more than one proximate cause of a death." Clerk's Papers (CP) at 105 (Instr. 11). The court also correctly instructed the jury:

> If you are satisfied beyond a reasonable doubt that the driving of the defendant was a proximate cause of the death, it is not a defense that the conduct of the deceased or another may also have been a proximate cause of the death.
> However, if a proximate cause of the death was a new independent intervening act of the deceased or another which the defendant, in the exercise of ordinary care, should not reasonably have anticipated as likely to happen, the defendant's act is superseded by the intervening cause and is not a proximate cause of the death. An intervening cause is an action that actively operates to produce harm to another after the defendant's act or omission has been committed.

However, if in the exercise of ordinary care, the defendant should reasonably have anticipated the intervening cause, that cause does not supersede the defendant's original act and the defendant's act is a proximate cause. It is not necessary that the sequence of events or the particular injury be foreseeable. *It is only necessary that the death fall within the general field of danger which the defendant should have reasonably anticipated.*

CP at 106 (Instr. 12) (emphasis added).

A superseding cause "'is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another.'" *Meekins*, 125 Wn. App. at 398 (quoting RESTATEMENT (SECOND) OF TORTS § 440 (1965)). A superseding cause relieves the defendant of liability even if the defendant's actions helped bring about the harm. *Meekins*, 125 Wn. App. at 398.

"An intervening cause is a force that operates to produce harm *after* the defendant has committed the act or omission." *State v. Roggenkamp*, 115 Wn. App. 927, 945, 64 P.3d 92 (2003), *aff'd*, 153 Wn.2d 614, 106 P.3d 196 (2005). "'A force set in motion at an earlier time is an intervening force if it first operates after the actor has lost control of a situation and the actor neither knew nor should have known of its existence at the time of his negligent conduct.'" *Roggenkamp*, 115 Wn. App. at 945 (quoting RESTATEMENT (SECOND) OF TORTS § 441(1), cmt. a (1965)).

An intervening act will not relieve a defendant from culpability unless the act is not reasonably foreseeable. *Roggenkamp*, 115 Wn. App. at 945-46. "In determining whether an intervening act is a superseding cause, we consider whether the intervening act (1) "created a different type of harm," (2) "constituted an extraordinary act," and (3) "operated independently" of the defendant's actions. *Roggenkamp*, 115 Wn. App. at 945.

A victim's contributory negligence is not a defense to negligent or vehicular homicide. *State v. Judge*, 100 Wn.2d 706, 718, 675 P.2d 219 (1984). However, a defendant is not culpable for a death resulting from the defendant's driving if a "superseding intervening event" caused the

5

death. *State v. Souther*, 100 Wn. App. 701, 708–09, 998 P.2d 350 (2000). The intervening event may be the actions of either a third party or the deceased. To escape liability as a result of the deceased's own negligence, "the defendant must show that the deceased's contributory negligence was a supervening cause without which the defendant's contributory negligence would not have caused the accident." *Souther*, 100 Wn. App. at 709.

*Roggenkamp* is similar to this case. 115 Wn. App. 927. In *Roggenkamp*, the defendant drove on a two-lane county road that had a posted 35 miles per hour speed limit. 115 Wn. App. at 931. He entered the oncoming traffic lane to pass another vehicle and reached a speed of roughly 70 miles per hour. *Roggenkamp*, 115 Wn. App. at 933. While Roggenkamp was still in the oncoming lane, a vehicle turned into that lane from an intersection. *Roggenkamp*, 115 Wn. App. at 933. Roggenkamp collided with that vehicle, seriously injuring three passengers and killing another. *Roggenkamp*, 115 Wn. App. at 933. The driver of the vehicle Roggenkamp hit had a blood alcohol content over the legal limit for driving. *Roggenkamp*, 115 Wn. App. at 934.

*Roggenkamp* held that the drunk driver's actions were not a superseding cause of the accident for two reasons. 115 Wn. App. at 946-47. First, the drunk driver's action of turning left onto a two-lane residential roadway was reasonably foreseeable. 115 Wn. App. at 946. Second, Roggenkamp's recklessness was ongoing when the drunk driver pulled out of the intersection. *Roggenkamp*, 115 Wn. App. at 947. Here, as in *Roggenkamp*, the acts of the driver and a passerby were foreseeable.

Whether an act is a proximate cause and whether there is a superseding, intervening cause are both issues of fact for a jury to decide. *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 613, 257 P.3d 532 (2011), *Meekins*, 125 Wn. App. at 397. The court so instructed the jury. In

particular, the court instructed that, "*It is only necessary that the death fall within the general field of danger which the defendant should have reasonably anticipated.*" CP at 106 (Instr. 12).

The issue of foreseeability is only removed from the factfinder's consideration if it is "highly extraordinary or unexpected." *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 431, 40 P.3d 1206 (2002). But, where the acts are not so highly extraordinary or unexpected, whether an independent cause is reasonably foreseeable is a question for the trier of fact. *Micro Enhancement Int'l, Inc.*, 110 Wn. App. at 431.

Here, there is nothing "so highly extraordinary or unexpected" to compel us to review this issue as a matter of law. Instead we review whether any rational jury could find the essential elements of the crime beyond a reasonable doubt.[3] Although this specific victim may not have been foreseeable, the general field of danger was clearly foreseeable. And the record as a whole supports that a reasonable jury could find beyond a reasonable doubt that Frahm's rear-ending Klase's vehicle proximately caused Irvine's death.

C.      Sufficient Evidence Supports Conspiracy to Commit Perjury

Frahm next argues that insufficient evidence supports his conviction for conspiracy to commit perjury in the first degree because there is no evidence of an agreement.[4] Nielsen testified that no agreement existed because the plan to secure Frahm's freedom by providing the police with a false alibi was his and his alone. We disagree that the evidence is insufficient.

The State charged Frahm of reaching an agreement with Nielson to "make a materially false statement which he knows to be false under oath," and asserted that either Frahm or Nielson took a substantial step in pursuance of the agreement. CP at 22.

---

[3] *Green*, 94 Wn.2d at 220-21.

[4] Frahm agrees Nielsen committed perjury by providing the police a false statement under oath.

A person is guilty of conspiracy if, with the intent to commit a crime, "he or she agrees with one or more persons to engage in or cause the performance of such [criminal] conduct, and any one of them takes a substantial step in pursuance of such agreement." RCW 9A.28.040(1). In an official proceeding, making "materially false" statements to police is a crime. RCW 9A.72.020(1). The court instructed the jury that agreeing with one or more person to make a materially false statement to police, and taking a substantial step "in pursuance of such agreement," constituted the crime of perjury in the first degree. CP at 118 (Instr. 23).

In this case, Nielsen testified that the plan to secure Frahm's freedom by providing police with a false alibi was his and his alone. Frahm argues Nielsen's testimony proves there was no agreement between the parties, and thus there can be no conspiracy.

Frahm relies heavily on *State v. Pacheco*, which reversed the defendant's conviction for conspiracy to commit murder in the first degree. 125 Wn.2d 150, 151, 882 P.2d 183 (1994). Pacheco, a Clark County Sheriff's Deputy, provided security for a man he believed to be a drug dealer. *Pacheco*, 125 Wn.2d at 152. Pacheco agreed to murder a purported drug buyer who had allegedly cheated the drug dealer. *Pacheco*, 125 Wn.2d at 152. However, the "drug dealer" was actually an undercover police informant and part of a joint FBI and Clark County Sheriff's investigation. *Pacheco*, 125 Wn.2d at 152. *Pacheco* concluded that because the defendant's "coconspirator" never actually intended an actual murder, no agreement existed; therefore, no conspiracy existed. 125 Wn.2d at 154-55. "A conspiratorial agreement necessarily requires more than one to agree because it is impossible to conspire with oneself. We conclude that . . . the

8

Legislature intended to retain the requirement of a genuine or bilateral agreement."[5]  *Pacheco*, 125 Wn.2d at 155 (internal citation omitted).

Frahm's reliance on *Pacheco* is unpersuasive.  Although the crime of conspiracy does require proof of agreement, that proof may come in the form of circumstantial evidence.  *State v. Barnes*, 85 Wn. App. 638, 664, 932 P.2d 669 (1997); *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).  "A formal agreement is not necessary."  *State v. Israel*, 113 Wn. App. 243, 284, 54 P.3d 1218 (2002).

Nielsen and Frahm met in jail.  They hatched the plan to provide Frahm with a false alibi.  Frahm provided Nielsen with the details necessary to make the lie appear more credible, including a description of his truck's interior on the night of the accident.

When viewing the evidence and its reasonable inferences in a light most favorable to the State, sufficient evidence supports Frahm's conspiracy conviction.

II.     No Ineffective Assistance of Counsel

Frahm also argues that his defense attorney's failure to object to a recording of his interrogation in which police repeatedly labelled him a liar violated his right to effective assistance of counsel.  Because Frahm fails to show prejudice, we reject his claim.

---

[5] The legislature promptly overruled *Pacheco* by amending the applicable statute.  It allowed convictions for one party agreement conspiracies when the second party is "a law enforcement officer or other government agent who did not intend that a crime be committed."  RCW 9A.28.040(2)(f); LAWS OF 1997, ch. 17, § 1.

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32–33, 246 P.3d 1260 (2011).

In this case, the trial court allowed the State to play the unredacted recording of Frahm's interrogation by the police, in which the police stated he was driving the F-150 and was responsible for the accidents. They repeatedly accused Frahm of lying. Frahm's defense counsel did not object to the recording.

Frahm fails to demonstrate prejudice. In fact, Frahm does not expressly address prejudice but instead focuses on the legal impropriety of the recording's contents. At best, Frahm argues prejudice by implying that improper evidence is particularly likely to influence the jury when presented by an authority figure such as a police officer.

The lack of prejudice is shown by the record as a whole and the following specific facts. The State presented twenty-nine witnesses who provided evidence independent from the recorded confession. Substantial evidence tied Frahm and his intoxication to his truck at the time of the collision. That evidence included DNA evidence, 911 calls that described his erratic driving, Irvine's call to 911 that identified Frahm's truck, video evidence of Frahm leaving the collision scene, Frahm's intoxication level shortly before the accident, cell phone tracking data, and recorder data information from Frahm's truck.

Because Frahm has not met his burden to show prejudice, we need not address whether his counsel's performance was deficient.

III.    SAG

Frahm raises a number of issues in his SAG.  With the exception of his challenge to his vehicular homicide conviction, discussed above, Frahm's arguments are not supported.

First, Frahm asserts that the multiple trial continuances violated his constitutional right to a speedy trial.[6]  Appellate review of alleged speedy trial violations are fact specific and consider the following non-exclusive factors: the conduct of the prosecution and the defendant, the "'length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'"  *State v. Ollivier*, 178 Wn.2d 813, 827, 312 P.3d 1 (2013) (quoting *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)).

In this case, Frahm signed, and the trial court accepted, three speedy trial waivers.  Frahm later sought to withdraw his third speedy trial waiver and, against the advice of defense counsel, filed a pro se motion to that effect.  The trial court denied Frahm's motion.  Defense counsel later requested, and received, an additional continuance based on the State's disclosure of roughly 200 pages of discovery from the Washington State crime lab regarding debris found at the accident and 100 pages of DNA analysis notes shortly before trial.  Frahm claims roughly 17 months' delay in total.

Frahm's speedy trial argument fails.  There is no evidence that the prosecution conducted itself in a harassing manner, and although the multiple continuances did cause significant delay, the majority were granted at Frahm's request.  Frahm freely signed the speedy trial waivers, and does not explain how the trial court not allowing him to change his mind constitutes a reversible violation of his rights.  Moreover, the continuances appear to have benefitted Frahm.  For example

---

[6] Within this issue, Frahm also objects to the State filing a third amended information, which added the charge of manslaughter in the first degree.  Because the trial court dismissed the manslaughter charge we do not address it.

they allowed his lawyer additional time to review technical materials disclosed by the State. There is no evidence that these continuances prejudiced Frahm.

Within this issue, Frahm's SAG seems to switch focus to argue that late disclosures by the State violated discovery rules under CrR 4.7. Frahm asserts that the State's alleged discovery violations forced him to choose between his constitutional rights to a speedy trial and effective counsel. The trial court also considered this issue, finding no discovery violation. We need not review the trial court's finding, because Frahm does not adequately support his argument. Frahm alleges, without support, that the State's disclosure was intentionally timed to "harass" him. SAG at 5. Given that the trial court granted a continuance, thus curing any potential prejudice resulting from late discovery, Frahm has also not demonstrated harm from the State disclosure.

Second, Frahm argues that the State violated his right to a fair trial by informing the jury that he was in custody for the charges presented at trial. Because Frahm presents no credible argument on this issue, we do not address this assertion.[7] RAP 10.10(c); *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).

Third, Frahm argues that the prosecution improperly presented surveillance footage with an incorrect time stamp to the jury. Again, Frahm presents no credible argument on this issue. RAP 10.10(c). Although the time stamp on the surveillance video in question was roughly one hour fast, Frahm acknowledges the jury was informed of the discrepancy. Frahm provides no evidence that the time stamp prevented the jury from understanding the timeline of events.

---

[7] This argument is little more than a bald assertion, and we are not required to search the record on Frahm's behalf. To the extent Frahm relies on matters outside the record, a personal restraint petition is the appropriate means to raise such issues. *See State v. McFarland*, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995).

49231-8-II

We affirm.

_____
Melnick, J.

We concur:

_____
Worswick, P.J.

_____
Bjorgen, J.

13