IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36817-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ELIZABETH L. TURNER-MURPHY, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — When a driver impaired by alcohol ignores a stop sign, drives through the controlled intersection, and strikes a motorcycle thereby killing the motorcyclist, is the failure of the motorcyclist to see and react to the car a sufficient intervening cause to preclude a finding that the driver's conduct was the proximate cause of the death of the motorcyclist and to shield the driver from a charge of vehicular homicide? Because the impaired driver should have foreseen the motorcyclist entering the intersection and because the unlawful conduct of the impaired driver did not end until the collision, we answer in the negative. We affirm the conviction of appellant Elizabeth Turner-Murphy for vehicular homicide.

FACTS

Because Elizabeth Turner-Murphy challenges the sufficiency of evidence to

convict her of vehicular homicide, we glean the facts from trial testimony. On October 26, 2017, a Ford Expedition driven by Turner-Murphy collided with a motorcycle ridden by Valarie Daly inside the intersection of Grace Avenue and Pines Road in Spokane Valley. Daly died from injuries sustained in the collision. Numerous witnesses, including Maura Gopar Santos, Michael Deafled, Lynette Williams, Mary Hayward, and Robert Barber, saw portions of the events leading to the crash. We relate some of the facts from the various perspectives of the eyewitnesses.

During the evening of Wednesday, October 25, 2017, Elizabeth Turner-Murphy consumed two vodka and seltzer drinks. Her partner prepared the drinks. Turner-Murphy assumes each drink contained three shots of alcohol. At 10 p.m., an ill Turner-Murphy retired to bed in her Spokane Valley abode.

At 4 a.m., on Thursday, October 26, 2017, Elizabeth Turner-Murphy's alarm rang. Because she remained ill, she decided to avoid work for the day. She returned to sleep and awoke four hours later. Although the illness persisted, she proceeded to run an errand in her vehicle.

On the morning of October 26, Valarie Daly drove a 2017 Triumph motorcycle to work. Daly traveled south on Pines Road in Spokane Valley. The weather was sunny and the roads dry. Pines Road has two lanes running each direction. The speed limit is 35 miles an hour. Pines Road eventually intersects with Grace Avenue. At the

2

intersection, stop signs control the traffic moving on Grace Avenue. Thus, traffic on Pines Road enjoys the right of way.

On October 26, 2017, at 8:40 a.m., Maura Gopar Santos drove her son to school and then traveled south in her car on Pines Road toward her workplace. As Gopar left the elementary school and traveled on Pines Road, she noticed a motorcycle moving 20-25 miles an hour. Valarie Daly rode the motorcycle. The motorcycle traveled in the inside southbound lane and parallel to Gopar's vehicle. Gopar traveled below 35 miles an hour, because she had not reached the speed limit after traveling through a 25 mile per hour school zone.

According to Maura Gopar Santos, the motorcycle moved a short distance ahead of Gopar as the two approached the intersection of Grace Avenue and Pines Road. Suddenly, a Ford Expedition traveling on Grace Avenue crossed Pines Road. Gopar noticed the Ford SUV no more than two seconds before the Expedition collided with the motorcycle. The driver of the motorcycle collapsed to the ground. Gopar approached the motorcyclist to see if she could help the downed rider, but the rider was unconscious.

On October 26, between 8:45 and 8:50 a.m., Michael Deafled, a shuttle driver for the Black Pearl Casino, retrieved co-employee Lynette Williams from the Casino's employee parking lot on East Grace Avenue. As he left the parking lot and entered Grace Avenue, the green Expedition, driven by Elizabeth Turner-Murphy and traveling in the same direction, pulled around him. According to Deafled, as the Ford Expedition

3

approached the stop sign at the intersection with Pines Road, the SUV driver performed a California roll through the stop sign after looking to the left only. According to Deafled's passenger, Lynette Williams, the driver of the Expedition executed a California roll at the intersection with Pines Road and then jetted across Pines Road.

According to Michael Deafled, as the Ford Expedition crossed the four lanes of Pines Road, the vehicle struck a motorcycle. The motorcyclist lacked any time to react or hit the cycle's brakes. The driver of the SUV neither applied her brakes, nor accelerated to avoid a collision. After the collision, the driver of the Expedition stopped her vehicle, inspected the damage to her vehicle, and returned inside her SUV.

On October 26, at 8:40 a.m., Mary Hayward drove her children to school. Hayward then headed west on East Grace Avenue. According to Hayward, she traveled behind a Ford Expedition, which came to a complete stop at the intersection with Pines Road. Suddenly, the SUV driver accelerated and struck a motorcyclist. Neither the motorcyclist nor the driver of the SUV applied brakes.

On October 26, 2017, Robert Barber journeyed on Pines Road going south toward Interstate 90 in a vehicle driven by his girlfriend. Two cars traveled between Barber's car and a motorcycle traveling in the same lane. The biker drove prudently. Barber saw a green SUV come to a California stop at the stop sign on Grace Avenue and then proceed across the intersection. He believes the SUV driver looked both ways. According to Barber, the motorcyclist had no opportunity to apply brakes to avoid a collision.

4

We return to the events from the perspective of Elizabeth Turner-Murphy. On the morning of October 26, Turner-Murphy completed her errand and then drove west on East Grace Avenue in Spokane Valley. Turner-Murphy was familiar with the intersection of Pines Road and Grace Avenue. She regularly crossed the intersection and knew traffic to be heavy in the morning. According to Elizabeth Turner-Murphy, when she reached the stop sign at the intersection with Pines Road, she looked left and then right, and then looked both ways again. She entered the intersection only after concluding passage was safe. Suddenly Turner-Murphy heard a noise similar to a bomb exploding. She never saw a motorcycle that struck her vehicle. Turner-Murphy finished crossing Pines, parked her vehicle at the side of the road, and exited the car. Turner-Murphy saw someone helping a person on the ground and someone phoning 911. She returned to her Ford Expedition and waited.

At 8:56 a.m., on October 26, Washington State Patrol Trooper Barry Marcus responded to dispatch's request to assist at a motorcycle-vehicle collision. When Trooper Marcus arrived at the intersection of Pines Road and Grace Avenue, someone was administering CPR on Valarie Daly. Elizabeth Turner-Murphy's Ford Expedition faced westbound on Grace Avenue. Valarie Daly's motorcycle laid on Grace Avenue immediately outside the intersection.

Trooper Barry Marcus examined the two vehicles. The Ford Expedition sustained damage on the right side passenger door area. Trooper Marcus surmised that the motorcycle struck the right side of the SUV.

At the scene of the collision, Trooper Barry Marcus interviewed Elizabeth Turner-Murphy. Turner-Murphy told Trooper Marcus that she headed west on Grace Avenue across Pines Road. She never saw the motorcycle ridden by Valarie Daly.

Trooper Barry Marcus noticed that Elizabeth Turner-Murphy suffered no injuries that would prevent her from doing field sobriety tests. Turner-Murphy told Barry Marcus that she felt fine. Trooper Marcus, a drug recognition expert, asked Turner-Murphy to submit to field sobriety tests, and Turner-Murphy consented. As he conducted the tests, Marcus noted an odor of alcohol on Turner-Murphy's breath. Trooper Marcus conducted the horizontal gaze nystagmus test, and Turner-Murphy exhibited six out of six clues indicating intoxication. Marcus conducted the walk-and-turn test, and Turner-Murphy exhibited four out of eight clues suggesting impairment. Finally, Turner-Murphy completed the one-leg stand test, during which she presented three out of four factors indicating impairment.

After completing the field tests on Elizabeth Turner-Murphy, Trooper Barry Marcus concluded that Turner-Murphy had consumed alcohol. Trooper Marcus further concluded that Turner-Murphy could not safely operate a vehicle. He placed her under

6

arrest and obtained a warrant for a blood sample. Barry Marcus transported Turner-Murphy to Valley Hospital, where the blood draw occurred.

Washington State Trooper James Wickham, a collision technical specialist, arrived at the intersection of Pines Road and Grace Avenue at 9:15 a.m. Trooper Wickham determined that Valarie Daly's motorcycle hit the passenger side door of Elizabeth Turner-Murphy's Expedition. Daly flew over the motorcycle's handlebars, and her head and helmet struck the SUV's passenger window. Wickham found no brake marks at the scene. Trooper Wickham determined that Turner-Murphy entered the intersection and failed to yield to the right-of-way traffic traveling south on Pines. Neither vehicle suffered mechanical failure.

Washington State Trooper James Wickham testified at trial that a person's average reaction time is 1.5 seconds. If a vehicle pulls in front of a motorcyclist, the biker may lack any reaction time. Even if a motorcyclist sees a car accelerate, 1.5 seconds may be too late to react.

Washington State Patrol Detective Ryan Spangler, a collision reconstructionist, responded to the accident on Grace Avenue and Pines Road at 9:40 a.m., on October 26. Detective Spangler observed that the front of Valarie Daly's motorcycle sustained substantial damage due to contact with another object. At trial, Detective Spangler explained that, because of the weight difference between the motorcycle and SUV, the effect of the motorcycle striking the Expedition was equivalent to hitting a "brick wall."

7

Report of Proceedings (RP) (Mar. 25, 2019) at 617; *See* Exhibit P-16. The physical evidence confirmed that neither vehicle attempted to stop before the collision. Spangler could not estimate the speed of either vehicle. Detective Spangler concluded that, had Valarie Daly seen the SUV and perceived it as a hazard, she would have had time and distance to stop. The evidence showed that she never observed the SUV.

Valarie Daly died on October 26, 2017. John Howard, Spokane County forensic pathologist and medical examiner, performed an autopsy on Daly that day. Dr. Howard found dozens of blunt impact injuries and internal injuries consistent with trauma from a traffic collision. Howard opined that the motorcycle collision caused Daly's death.

Valley Hospital forwarded Elizabeth Turner-Murphy's blood sample to the Washington State Patrol Toxicology Laboratory. State Patrol forensic scientist David Nguyen tested the blood and concluded that Turner-Murphy's blood contained 0.15 grams of alcohol per one-hundred milliliters of blood. At trial, Nguyen opined that, according to scientific studies, a person with a blood alcohol level at 0.08 or higher cannot safely operate a motor vehicle.

PROCEDURE

The State of Washington charged Elizabeth Turner-Murphy with one count of vehicular homicide. The information alleged that Turner-Murphy committed the crime by two alternative means, operating a motor vehicle while under the influence of intoxicating liquor or operating the vehicle in a reckless manner.

In closing, Elizabeth Turner-Murphy's defense counsel argued that Valarie Daly's actions constituted an intervening and superseding cause of her own death that precluded any action of Turner-Murphy from being a proximate cause of the death and thus shielded Turner-Murphy from criminal liability.

> [Ms. Daly] was supposed to start work at 9:00. She worked on Argonne. She still has a ways to go. Ms. Daly started off next to Gopar, Ms. Gopar, tucked behind her. She increased her speed after getting out of the school zone. She increased her speed to 35 miles an hour, and Ms. Gopar's statement that she prepared, said she passed her; that she passed her. With nobody in front of her, this would have been what she saw. All four lanes of traffic.
>
> Trooper Wickham testified he walked the scene and there were no obstructions. Detective Spangler testified that accounting for reaction time there was still 2.5 seconds left. That included reaction time. Everyone else sees the SUV and brakes.
>
> . . . If Ms. Daly had not been speeding, would Ms. Turner-Murphy have been able to get all the way across? But still the question is why, again, why no brake marks?
>
> Troop[er] Wickham said there was no mechanical failure with the motorcycle. And this accident happened at 8:56 a.m. *Ms. Daly's actions were a superseding intervening act that broke the chain of events that began when Ms. Turner-Murphy left the stop sign. Ms. Daly's actions of speeding up after the school zone and passing the Jeep in the 35 miles per hour zone happened after Ms. Turner-Murphy took off. She had no control over Ms. Daly's actions.*
>
> Trooper Wickham said you have a duty to yield to the legally traveling traffic. If someone is speeding are they legally traveling in traffic?

RP (Mar. 26, 2019) at 42-43 (emphasis added).

The jury convicted Elizabeth Turner-Murphy of vehicular homicide solely on the driving while under the influence of intoxicants prong of the crime.

9

LAW AND ANALYSIS

On appeal, Elizabeth Turner-Murphy repeats her trial theme that Valarie Daly's failure to react and stop her motorcycle to avoid the collision constituted a superseding cause that negated any conduct of Turner-Murphy as the proximate cause of Daly's demise.  Based on this refrain, Turner-Murphy contends the State presented insufficient evidence to convict her of vehicular homicide.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt.  *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017).  A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that can be drawn from it.  *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010).  Circumstantial and direct evidence are equally reliable.  *State v. Cardenas-Flores*, 189 Wn.2d at 266.  This court does not reassess issues of credibility, persuasiveness, or conflicting testimony.  *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014).

According to Elizabeth Turner-Murphy, Valarie Daly enjoyed a clear and unobstructed view of the intersection of Pines Road and Grace Avenue.  Turner-Murphy emphasizes that the State's own witness, Detective Ryan Spangler, testified that Daly had sufficient time to react and stop.  When Turner-Murphy crossed Pines Road, she could not have reasonably anticipated Daly's failure to stop her motorcycle to avoid the

collision. In so arguing, Turner-Murphy takes the evidence in a light favorable to her, not to the State. Numerous witnesses testified that Daly lacked any time to stop. Regardless, one, who breaches a stop sign, should reasonably expect that perpendicular traffic may not stop.

RCW 46.61.520(1) governs the crime of vehicular homicide:

> When the death of any person ensues within three years as a *proximate result* of injury *proximately caused* by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:
> (a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or
> (b) In a reckless manner, or
> (c) With disregard for the safety of others.

(Emphasis added.) The jury convicted Elizabeth Turner-Murphy under subsection (a) of the statute.

RCW 46.61.520(1) requires proof of causation behind two events. First, the driving of the motor vehicle by the accused must proximately cause injury to the victim. Second, the injuries sustained in the accident must proximately result in the victim's death. We consider the term "proximate result" to encompass the same concept as "proximate cause." The parties conflate the two elements of causation, and so do we. The State need not establish that the intoxicated driving caused the injuries and death, only that the collision occurred while Turner-Murphy drove under the influence. *State v. Rivas*, 126 Wn.2d 443, 448, 450-51, 896 P.2d 57 (1995).

11

Neither RCW 46.61.520(1) nor any other criminal statute defines "proximate cause." Nor does the statute mention the concept of superseding cause, on which Elizabeth Turner-Murphy relies. We review case law for delineation of the concepts of proximate cause and superseding cause.

Criminal law borrows the notion of proximate cause from tort law. *See e.g.*, *State v. Frahm*, 193 Wn.2d 590, 596-97, 444 P.3d 595 (2019). The law defines "proximate cause" as "'a cause which in direct sequence, unbroken by any new, independent cause, produces the event complained of and without which the injury would not have happened.'" *State v. McAllister*, 60 Wn. App. 654, 660, 806 P.2d 772 (1991) (quoting *State v. Gantt*, 38 Wn. App. 357, 359, 684 P.2d 1385 (1984), *abrogated on other grounds by State v. Roggenkamp*, 153 Wn.2d 614, 106 P.3d 196 (2005). A defendant's conduct constitutes a proximate cause of harm if the conduct serves as a substantial factor in bringing about the harm and no other rule relieves her from liability. *State v. Meekins*, 125 Wn. App. 390, 396-97, 105 P.3d 420 (2005). Elizabeth Turner-Murphy's theory of superseding cause constitutes a potential independent cause and a possible rule relieving her of liability under the definitions of proximate cause.

One can avoid responsibility for a death that results from driving provided a superseding, intervening event causes the death. *State v. Rivas*, 126 Wn.2d 443, 453 (1995). The criminal law also appropriates its definition of superseding cause from tort law. *State v. Frahm*, 193 Wn.2d 590, 600 (2019); *Campbell v. ITE Imperial Corp.*, 107

12

Wn.2d 807, 811-14, 733 P.2d 969 (1987). An intervening cause is a force that actively operates to produce harm to another after the actor's act or omission has been committed. *State v. Frahm*, 193 Wn.2d at 600; *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 17 n.7, 810 P.2d 917, 817 P.2d 1359 (1991). An intervening cause that suffices to relieve the wrongdoer of liability is a superseding cause. *State v. Frahm*, 193 Wn.2d at 600.

Whether an act comprises a superseding cause depends in part on whether the accused can reasonably foresee the intervening act. *State v. Frahm*, 193 Wn.2d at 600. The law only considers intervening acts that are not reasonably foreseeable as superseding causes. *State v. Frahm*, 193 Wn.2d at 600; *Crowe v. Gaston*, 134 Wn.2d 509, 519, 951 P.2d 1118 (1998). An intervening act will not constitute a superseding cause if the original actor should have realized that a third person might so act. *State v. Frahm*, 193 Wn.2d at 600; *Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 811-14 (1987). Factors to consider in determining whether an intervening act is foreseeable include whether (1) the intervening act created a different type of harm; (2) the intervening act constituted an extraordinary act; and (3) the intervening act operated independently. *State v. Roggenkamp*, 115 Wn. App. 927, 945-46, 64 P.3d 92 (2003), *aff'd*, 153 Wn.2d 614, 106 P.3d 196 (2005).

For the conduct of one other than the accused to form a superseding cause, the intervening conduct must also actively produce the harm after the accused commits his act. *State v. Meekins*, 125 Wn. App. at 398; *State v. Souther*, 100 Wn. App. 701, 710,

13

998 P.2d 350 (2000). Stated differently, if the other conduct occurs concurrently to the defendant's actions, the other conduct cannot be a superseding cause. *State v. Frahm*, 193 Wn.2d 590, 601 (2019); *State v. Roggenkamp*, 153 Wn.2d at 631; *State v. Meekins*, 125 Wn. App. at 398-99.

Both of the two limitations on superseding causes apply here. The conduct of Valarie Daly in failing to notice Elizabeth Turner-Murphy's Ford Expedition was foreseeable because of the heavy traffic and the fact that Daly, not Turner-Murphy, enjoyed the right of way. Daly's conduct was not extraordinary. Daly's conduct produced the same harm as the driving of Turner-Murphy. The conduct of Turner-Murphy elapsed concurrently with the conduct of Daly to produce the collision of the two vehicles and the death of Daly.

Two Washington decisions confirm our conclusion that any conduct of Valarie Daly did not relieve Elizabeth Turner-Murphy of criminal responsibility. In *State v. Souther*, 100 Wn. App. 701 (2000), Roger William Souther drove a pickup truck at a time that his blood alcohol level was 0.29. He approached an intersection controlled by a traffic light, but the light was green. As Souther turned left, he struck an oncoming motorcyclist, and the collision killed the cyclist. In defense of the charge of vehicular homicide, Souther contended the conduct of the motorcyclist formed a superseding cause because the cyclist sped and displayed a left-turn signal. Because the alleged wrongful

conduct of the victim occurred before the collision, this court deemed the deceased's actions to be concurring, not superseding, causes.

In *State v. Roggenkamp*, 115 Wn. App. 927 (2003), Michael Roggenkamp drove down a rural two lane residential road with a posted speed limit of 35 miles per hour. While traveling at 70 miles an hour, Roggenkamp entered the oncoming traffic lane to pass the vehicle in front of him. Roggenkamp then noticed a car driven by Vonrahe Chilcoate turn from an intersection into the lane in which he traveled. He immediately attempted to stop which caused his brakes to lock and sent his vehicle into a skid. JoAnn Carpenter earlier stopped at the stop sign of the intersection and then made the same turn as Chilcoate. Roggenkamp's vehicle struck Carpenter's car, and the collision killed Carpenter's son instantly. At the time of the impact, Carpenter's blood alcohol concentration level was 0.13.

On appeal, Michael Roggencamp argued that JoAnn Carpenter's intoxication and her turning into his path after his car began to skid were supervening causes of the boy's death. This court observed that the intervening act must have occurred after the defendant's act or omission. Roggenkamp's reckless driving was ongoing at the time of Carpenter's act of pulling into the intersection. Roggenkamp also should have foreseen the possibility that a vehicle would enter the roadway from the intersection.

We note that the victim of a crime generally takes some action that leads to his or her vulnerability to the crime. For example, a quarry of a street robbery may saunter on

the sidewalk and, when confronted, fail to flee the scene before being robbed.  The view

of superseding cause advanced by Elizabeth Turner-Murphy might negate many, if not

most, crimes.

CONCLUSION

We affirm Elizabeth Turner-Murphy's conviction for vehicular homicide.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, A.C.J.

_____
Siddoway, J.